WASHBURN *v.* THE MIAMI VALLEY INS. CO. and others.[*]

*(Circuit Court, S. D. Ohio.* ——, 1880.)

INSURANCE—CONDITIONS IN POLICY—EXPLOSION.—Where a policy of insurance against loss by fire contains a condition that the insurance company shall not be liable for any loss or damage occasioned by explosion of any kind, unless fire ensues, and then for the loss and damage by fire only, and a fire originates in the insured premises which produces an explosion by which that property is destroyed, such destruction is a loss by fire within the meaning of the policy.

SAME—SAME—SAME.—An exception in a policy of fire insurance that the " company will not be liable for loss or damage occasioned by the explosion of a steam boiler, gunpowder, *or any other explosive substance,* except only such loss as shall result from fire that may ensue therefrom ; nor shall the company be liable for any loss by such fire, unless privilege shall have been given in the policy to keep such articles," etc. *Held*, that this exception must be viewed in the light of the surrounding circumstances, and that, from the nature of the business of the plaintiff, the parties must have contemplated the presence in the structure insured of the explosive substance known as flour dust, and that, therefore, its presence was not within the terms of such exception.

SAME—EXPLOSIVE SUBSTANCES—INCIDENT TO BUSINESS CARRIED ON. Explosions produced incidentally from the manufacturing which the parties contemplate would be carried on in the building insured, and which are an inseparable or necessary result of the process of manufacture, are not within such exceptions.

These actions were founded upon policies of insurance
against fire issued by the defendants to the plaintiff upon

*Prepared by Messrs. Florien Giauque and J. C. Harper, of Cincinnati, Ohio.

Washburn Mill A, Minneapolis, Minn. The defence was that the loss was occasioned by an explosion, and, therefore, fell within the exceptions given at length in the following opinion. A jury was waived, and the cases submitted to the court upon the proofs:

The evidence established the fact that a destructive fire had commenced and had been burning some minutes, when it communicated with an explosive material in the mill, known as flour dust, causing an explosion which destroyed and consumed the entire premises.

*Sage & Hinkle*, for plaintiff.

*Wm. M. Ramsey* and *Thomas McDougall*, for defendants.

SWAYNE, A. J. The policy issued by the Miami Valley Insurance Company contains the following clauses, upon the first of which this controversy is understood to turn, so far as that company is concerned: "Provided, etc., that this company shall not be liable for loss, etc., by lightning, or explosion of any kind, including steam boilers, unless fire ensues, and then for the loss or damage by fire only." And the second clause to which I wish to refer is as follows: "Gunpowder, saltpeter, phosphorus, petroleum, naphtha, benzine, benzole, or benzine varnish, are positively prohibited from being deposited, stored, or kept in any building insured or containing property insured by this policy, unless by special consent, in writing, indorsed on this policy, naming each article separately; otherwise the insurance shall be void."

The policy issued by the Fidelity Fire Insurance Company contains the same clauses. They are as follows: "Or if the assured shall keep gunpowder, fire-works, nitro-glycerine, phosphorus, saltpeter, nitrate of soda, petroleum, naphtha, gasoline, benzine, benzole, or benzine varnish; to keep or use camphene, spirit gas, or any burning fluid or chemical oils, without written permission in this policy, then, and in every such case, this policy is void."

Then follows the clause upon which, as respects this company, the controversy turns. The exception is in these words: "The company shall not be liable, etc., for any loss caused by the explosion of gunpowder, or any explosive substance, nor

explosion of any kind, unless fire ensues, and then for the loss or damage by fire only," etc.

The language of the policy issued by the Union Company, touching these exceptions, is as follows: "This company will not be liable for the loss or damage occasioned by the explosion of a steam-boiler, gunpowder, or any other explosive substance, except only such loss as shall result from fire that may ensue therefrom; nor shall the company be liable for any loss by such fire, unless privilege shall have been given in the policy to keep such articles," etc.

That makes the case very peculiar as to the Union Company. Giving a literal view to the language of the second clause, which I have just read, the policy was void at the outset, and never had any validity, because there was in the mill from the first an explosive substance, to-wit, flour dust, and there was no permit given in the policy to keep such substance.

Now, according to the theory contended for by the defence, the company never in legal effect insured the property which is named in the policy, and was known to have connected with it necessarily more or less of this explosive substance, and yet the company took the money of the assured, when it knew, or ought to have known, that according to the terms of its policy it had no validity whatever. Now, I cannot suppose that that was the intention of this company. The policy must be construed, like all other instruments in writing, in the light of surrounding circumstances; and I am willing to construe this particular "explosive substance" as not within the terms or meaning of the particular language of the policies upon that subject. I shall construe it, as if the language was the same, or substantially the same, as that upon the subject in the other policies. But I do not see, if the microscopic eye of a special demurrer were applied, why the gentleman for the defence might not as well contend that this policy had no validity, as that it had no validity so far as the effect of the explosion is concerned in the results that followed. But, as I do not take that view of the subject, I shall not apply that principle. Now, certain remarks are to

be made in the light of the clauses which have thus been read, construing the last one reasonably, in the light of the circumstances surrounding the parties when the contract was entered into, and which are material to be borne in mind.

It will be observed that the companies are protected, with respect to explosives, by making it fatal to the policies to keep them; the policies become void if such explosives are kept. Perhaps, right here, I might remark that that word "kept" must have a particular signification in this connection, and that it does not apply where explosives of a known fixed character, known to be such, were accidentally present in the structure insured; but it does apply where they were kept there knowingly, in violation of the terms which the policy contains with reference to them. That must have been the understanding or intention of the parties in reference to the peculiar substance flour dust, which is highly explosive, but which, as I have remarked, was necessarily present, and from which arose the genesis of the explosion out of which this controversy has arisen. The company had taken care to secure itself against the perils of explosion— *First*, by a comprehensive stipulation in the policy; *secondly*, the exceptions referred to are named only in connection with *fires which they have produced.* That is in the clause on which the controversy turns. And, by the way, the second clause I have read is the only clause to which counsel have referred. Nothing was said about the other provisions which I have read.

I repeat, explosives are named only in connection with fires which they have produced. There is nothing said about them in connection with fires which have produced them. The policies on that subject are wholly silent. Is not this somewhat remarkable, if the construction contended for by the companies be correct? In that case would not the language of the context have naturally been that the company will not be liable for explosions, and will not be liable for fires which produce them, or fires which they have produced? The first may define the liability of the company, and the sentence I have just read is certainly important. Would not

the policies have read "that they will not be liable for explosions caused by fires, or for fires caused by explosion?" I repeat, and it is a feature of great significance in the case, as it seems to me, that where explosions are produced by fires —accidental fires—the policy is wholly silent. Now, I am free to remark that it seems to me that this could hardly have been so if the intention of the parties had been as is contended for by the counsel for the defendants.

But, further, if it be suggested that this would leave the exception without any legal effect, I would say that there are several obvious answers. First, these clauses are frequently prepared by non-legal men, who do not know the legal effect of the language which they employ in such instruments, and I will add that these instruments go into the hands of individuals who know nothing of the legal effect of these special clauses which they contain. Again, if prepared by a legal hand, the writer may not have known, probably did not accurately know, the state of the law touching the subject to which the exception, and the exception within the exception, here in question, relate. Again, there is nothing which in terms, and this is substantially what I have said already, withdraws the exception here in question from the clause of insurance, as it would be if the construction contended for by the plaintiff's counsel be sustained. There is nothing disclosed which tends to withdraw the subject of these exceptions (nothing in terms, there may be by implication) of the clause here in question from the general language and operation of the clause employed. They refer to fires which the explosion shall produce, and are wholly silent as to the fires which produce such explosions.

Again, insurance policies, like all other written contracts, are to be reasonably construed; yet, as with respect to all other written contracts, insurance policies are to be construed most strongly against the party making them, which, in this case, is the insurance company.

I deem it proper to advert for a moment to the case in 7 Wallace, (*Ins. Co.* v. *Tweed*, 7 Wall. 44,) which I did not fully understand at the argument. The exception was somewhat

3*

similar, and the fire happened in that case from an explosion, producing a fire at a distant point from the site of the insured property. A wind prevailed at the time, and swept the fire a considerable distance, and the property insured, and covered by the policy, was destroyed by fire. The company was sued, and it defended on the ground that the case was covered by the exception, which was that the company should not be liable for a fire produced by an explosion. That policy was at the opposite pole from the one here under consideration, and the assured was defeated. He recovered nothing. No doubt he thought that very unreasonable, as it seems to me most persons would regard it. He intended, no doubt, to have his property protected by that policy, and supposed it was protected. The supreme court of the United States held from principle that it was not.

It is very possible that the conditions of this clause (which were frequently brought to my attention, for I had a great deal to do with this head of the law, practically) had produced a good deal of dissatisfaction, and hence this clause was changed. If that policy had been the same in this particular as those under discussion here, then, irrespective of the question of explosion, the party would have been entitled to recover; but, the policy being different, the result was different. A change was made, probably having its origin in that case and others like it—a change was made to meet that difficulty, and hence it is, perhaps, we have these policies phrased as they are before us.

Now, to recur again to the proposition to which I adverted at the outset, to-wit, that there is nothing here which in terms withdraws the protection against fire, although that fire should involve an explosion. It seems to me that there would have been language to that effect, if such had been the intention of the parties. The intention of the statute constitutes the law; the intention of the law-makers constitutes the law; the language may be within the letter of the statute and not within its meaning, and the language may be within its meaning and not within its letter. That is a familiar proposition. If we can ascertain the intention and meaning of the

parties here, that constitutes the contract which it is the object of the court to carry out. Now, there is another remark, perhaps rather hypercritical, but. proper in this connection to be made, and that is, according to the technical formality of the law of insurance this explosion cannot be recognized. It was a part of that fire—just as much a part of the fire, and admitted to be as such, covered by the insurance, as if there had not been an explosion, by the general language, "insurance against fire." If the exception had not been made, it would have been considered (which was conceded at the argument) a part of the fire, and the policy would have been held, for the purpose of this view of the case, just as effectual, as it regards the effects of the explosion produced by the fire, as the policy is now effectual with respect to fires produced by an explosion, upon which the language of the policy is express. Now, I think, under the circumstances of this case, that that view of the subject is entitled to very considerable consideration.

But there is another matter to be considered which has very great weight in the case. I am free to confess that, viewing this policy in its own light, I might doubt very much more than I do; but this subject has been litigated very fully before a very able and learned judge, a great lover of the authorities, and perhaps as much influenced by them as any judge to be found. I refer to the district judge of Michigan. *Washburn* v. *Union Fire Ins. Co.* U. S. Cir. Court, E. D. Mich., *Brown*, J., (see Detroit Post & Tribune of Nov. 8, 1879.) It seems he had no hesitation in coming to the conclusion that the insurers were liable under policies drawn like this, and for the purposes of this action identical with these in the cases before me. The same question was in several cases before the learned circuit judge of the Pennsylvania circuit, *(Washburn* v. *Artisans' Ins. Co.; Same* v. *Penn. Ins. Co.* U. S. Cir. Court, W. D. Penn. 9 Pittsburgh Legal Journal, (N. S.) 55,) and, without the slightest doubt or hesitation, he ruled in the same way in a case involving the same question. And they were afterwards before the district judge of this district, *(Washburn* v. *Farmers' Ins. Co.* U. S. Cir. Court, S.

D. Ohio, 2 FED. REP. 304; *Washburn* v. *Western Ins. Co.* U. S. Cir. Court, S. D. Ohio, October term, 1879, *Swing*, J.,) and he ruled in the same way.

Now, I must say that, under these circumstances, upon a mere doubt, and technical criticism and objection, of the importance of those which have been urged upon my attention, I am not quite bold enough to overrule these adjudications. In my judgment, they decide the question before me. I do not mean that the views of these gentlemen are in anywise conclusive—not at all; or that the same result would follow if a like adjudication had been made by one of my peers and brethren, or any number of them. But there is, doubtless, a moral binding force in the very indications to which I have adverted, which gives them a sufficient amount of gravity in my judgment, and rightfully gives it to them, to turn the scale of this case in favor of the plaintiff, and judgment will be rendered accordingly.

Judgment for plaintiff for amount of policies and interest.