Special Term—September 1854.

GHOLSON, J. presiding.

### HENRY MILLER *vs*. THE WESTERN FARMERS' MUTUAL INSURANCE COMPANY.

A policy of insurance, in respect of the rules by which it is to be construed, and the principles by which it is to be governed, differs nothing from other written mercantile contracts.

The common expression, that it is "eminently a contract of good faith," means only, that the good faith, which is the basis of all contracts, is more especially required in that species of contract, in which one of the parties is supposed to be necessarily less acquainted with the details of the subject of the contract, than the other.

A policy of insurance is a contract of indemnity, and the right to that indemnity, vested by the contract, can be taken away only on principles alike applicable to other instruments of that character.

Where in reference to the use of premises, adjoining those insured, there is no condition in the contract express or implied, and there has been no representation or suppression of any fact relating to the subject matter, the insured would have the same right to use his adjoining property, and would be governed by the same obligations, in respect of its use, as any other owner.

If such use be in itself lawful and right, though in its consequences a loss result, it is *damnum absque injuria*, and no legal responsibility rests on the owner.

A suppression or misrepresentation of material facts, though from ignorance, mistake, or negligence, stands on the same ground in its effect on the policy, as if such suppression or misrepresentation were wilful. But the principle, on which this rule is founded, can have no application to the conduct of the insured subsequent to the making of the contract.

There are some representations in their nature promissory. *Ex gra.* the estimate of the risk to be assumed, when it depends upon the *continuance* of material circumstances represented to the insurer.

The materiality of a representation in no way depends upon the contingency of an injury, resulting from the failure to make it good. The falsity of the representation will avoid the policy, though the loss occurred from a cause unconnected with the misrepresentation.

This was an action of assumpsit on a policy of insurance brought before the Code of civil procedure took effect, and transferred into this court from the Court of Common Pleas. The declaration is in the usual form, and sets out, substantially, the terms and conditions con-

tained in the policy. The policy was intended to insure the plaintiff " against loss or damage by fire, to the amount of $2000, on the following property, as described in Application and Survey No. 813, viz.: On his brick tavern house, situated on the corner of Lawrence and Front Streets, Cincinnati, Ohio." Among the other usual stipulations in the policy, is that which provides that in case the premises insured " be so altered, or be appropriated, applied, or used, to or for the purpose of carrying on, or exercising therein, any trade, business or vocation, which according to the by-laws and conditions, class of hazards, or rates hereto annexed, would increase the hazard, unless by consent, &c., then and from thenceforth, so long as the same shall be so appropriated, applied, or used, this policy shall cease and be of no force or effect."

To the declaration on this policy the defendants plead, " that at the time of the making by them of the said policy of insurance, to wit, on the 17th day of January, A. D. 1852, said plaintiff was in possession through his tenants of a certain brick building, on the south side of Front Street, in said city of Cincinnati, being the building next east and south of and adjoining the brick tavern house insured by said policy, which said building the tenants of said plaintiff, by his consent, used as and for a manufactory of laths; and afterwards, and before the loss described in said declaration, to wit, on the first day of August, A. D. 1852, said tenants ceased to use the same for said purpose, and after that day and until the happening of said loss, the tenants of said plaintiff by his consent used the said building as and for a manufactory of spokes, by which change of use, the risk of loss by fire of said building and of the adjoining brick tavern house

27

was greatly enhanced, and that afterwards on the 14th day of December, A. D. 1852, at said county, said building, in consequence of its said use as a manufactory of spokes, took fire and was consumed, and said fire was communicated and extended to the adjoining brick tavern house aforesaid, which was also consumed, whereby the loss alleged in said declarations occurred, which they are ready to verify," &c. To this plea there is a general demurrer by the plaintiff; and upon the sufficiency of the facts set forth in the plea, as a defence to the action, the Court is called on to decide.

GHOLSON, J.

The increase of risk arising from a change of use in the building adjoining the premises insured, is not provided for in the contract between the parties; nor is it alleged that there was any representation or concealment on the part of the plaintiff in reference to the ownership, position, or use of such adjoining building. The validity of the plea is rested, by the counsel for the defendants, on what is claimed to be a general principle of the law of insurance, that where there is *any material increase* of the risk by *any act* of the insured, and *a loss* which can be shown to be *a consequence* of such act, the insurer is not liable on the policy. The ground taken in support of the plea, may be well illustrated by reference to some remarks made in a recent analogous case in New York, Gates *vs.* Madison Co. Mut. Ins. Co., 1 *Seld.* 469. It is there said: " The defendants have by the terms of the policy and proposals annexed, guarded against an increase of the risk by any alteration, either in the buildings insured, or the business carried on therein, and if they had deemed

it important, they might have inserted a provision, prohibiting the erection of any other building upon the adjacent premises of the insured, during the continuance of the policy. But they have not thought proper to do so, and, in my opinion, the policy is not affected by the erection of the barn, as the defendants proposed to show, especially as it is not pretended that any injury resulted from it." Now in the present case it is alleged that an injury did result from the act done on the adjoining premises; and the effect of that allegation I am to consider.

The effect of the erection of other buildings upon the adjacent premises of the insured during the continuance of the policy, was considered in two other cases strongly relied on, in the argument by the counsel for the defendants, and to which I shall presently refer. Those cases, and the case cited above, had reference to the erection of new buildings on vacant lots adjoining the premises insured, and not, as in the present case, to a change in the use of a building already erected. But if the general principle, which the counsel for the defendants claims to have been established, by the cases on which he relies, be correct, I can see no reason why it should not as well apply to a material increase of risk, caused by a change in the use of a building erected, as to the erection of a new building.

The cases relied on, and which it will be proper to examine, are Stebbins *vs.* Globe Ins. Co., 2 *Hall S. C.* 632, and Howard *vs.* Ky. and Louisville Ins. Co., 13 *B. Monroe* 282. The last case refers to the former and to 2 *Phil. on Ins.* 177, as the authorities on which the decision is based. The only authority, I believe, cited by Phillips is the case 2 *Hall S. C.* 632. There is another case

which would appear to confirm the view taken for the defendants, Boatwright *vs.* Etna Ins. Co., 1 *Strobhart*, 281–287.

That there are general expressions found in these authorities, sustaining the validity of such a defence as that set up by the defendants, cannot well be controverted, and, as I have before stated, the case illustrating those general views, can scarcely be distinguished from the present. In the case of Howard *vs.* Ky. & Louisville Ins. Co., 13 *B. Monroe* 289, it is said: "The contract of insurance rests upon the mutual good faith of the parties. The assured violates that good faith by doing any act which increases the risk that has been incurred by the insurers. This breach of good faith, if it produces no injury to the other party, does not impair his own rights under the contract; but if it occasions a loss, such loss devolves upon himself, and not upon the insurer, inasmuch as it results from a violation of that good faith, which in legal contemplation was pledged to them, that the risk should not be increased by his act, during the running of. the policy, without their assent. Thus, if the assured should, subsequent to the date of the policy, erect a building near to the property insured, and thereby greatly increase the hazard of loss by fire, and a loss should occur, which was not occasioned by the building newly erected, the insurers would have no cause to complain of the act of the assured, but ought in justice to make good the loss. But if this act of the insured was the cause of the loss, and produced it, then, as it resulted from his own unauthorized act, involving a breach of those obligations which the observance of good faith imposed, the insurers ought not in justice to be liable for it, nor would the law

impose any obligation upon them to indemnify the insured for a loss occasioned by his own misconduct."

In the remarks quoted above, it is taken for granted, that *any* act of the insured increasing the risk is a breach of good faith, "an unauthorized act," and an act of "misconduct." Now it appears to me, that the correctness of any such general proposition should first be established.

A policy of insurance, in respect of the rules by which it is to be construed, and the principles by which it is to be governed, differs not from other written mercantile contracts. Hone *vs.* Mutual Safety Ins. Co., 1 *Sandf. S. C.* 137–151; Gates *vs.* Madison County Mut. Ins. Co. 1 *Seld.* 469–474. The common expression that it is eminently a contract of good faith, "only means, that the good faith, which is the basis of all contracts, is more especially required in that species of contract, in which one of the parties is supposed to be necessarily less acquainted with the details of the subject of the contract than the other." 1 *Selden* 474; 1 *Arn. on Ins.* 488. A policy of insurance is a contract of indemnity, and the right to that indemnity, vested by the contract, can be taken away only on principles alike applicable to other contracts of that character.

Where in reference to the use of premises, adjoining those insured, there is no condition in the contract express or implied, and there has been no representation or suppression of any fact relating to the subject matter, by what principle is the conduct of the party insured, as the owner of such adjoining premises, to be governed? Is there any other than the general maxim, *Sic utere tuo ut alienum non lædas?* In my opinion, he would have the same right to use his adjoining property and would be

governed by the like obligations in respect of its use as any other owner. If such use be in itself lawful and right, though unfortunately in its consequences a loss result, as not unfrequently happens, it is a loss but not an injury, and no legal responsibility therefore rests on the owner, who is generally himself a chief sufferer by the calamity. The proposition, that any act of the insured increasing the risk is an act of bad faith, appears to me to have proceeded from an erroneous conception of the term "good faith," in connection with contracts of insurance; resulting in an improper extension to the conduct of the insured, subsequent to the contract, of the principle of a rule only applicable, in respect of representations before, and at the time of entering into the contract. A suppression or misrepresentation of material *facts*, though from ignorance, mistake, or negligence, stands on the same ground in its effects on the policy, as if such suppression or misrepresentation were wilful. But the principle on which this rule is founded, can have no application to the conduct of the insured subsequent to the making of the contract. As already observed, the idea of eminent good faith to enforce which so stringent a rule was adopted, has reference to the position of the parties at the time of the inception of the contract; to the necessity, then, for truthful statements and a full disclosure as to all matters materially affecting the risk about to be assumed.

There are some representations which, in their character, are said to be promissory. Thus in the case of Stetson *vs*. the Massachusetts Fire Ins. Co., 4 *Mass*. 330–337, it is said, "The estimate of the risk undertaken by an insurer, generally depends upon the description of it made by the insured or his agent. A mistake or omission, in

his representation of the risk, whether willful or accidental, if material to the risk insured, avoids the contract. And where the estimate of the risk depends upon the continuance of the material circumstances represented to the insurer, these are not to be altered to his detriment, by any act of the insured, without a like effect upon the contract." Had the defence in this case been founded on some representations as to the use of the adjoining premises, a very different question might have been presented. But such is not the character of the defence.

It may be proper to observe that, in a recent case, Young *vs*. Washington Co. Mut. Ins. Co., 14 *Barb*. 555–547, Stebbins *vs*. Globe Ins. Co., is referred to and commented on, as if the general remarks in that case on the point under consideration had been made in view of a representation, that the adjoining lot was *vacant*. If this be so, it is of course no authority in the present case, but I do not so understand those remarks, and indeed, it would scarcely have been said of a representation, that its materiality depended on, whether any injury resulted from the failure to make it good. Such a consideration does not affect the operation of a material misrepresentation upon the policy. "It will avoid it, though the loss arose from a cause unconnected with the misrepresentation." 3 *Kent Comm*. 282, 1 *Arn. on Ins*. 501. I have spoken of the general remarks made in the case of Stebbins *vs*. Globe Ins. Co., for the point really decided in that case, if it have any bearing in this, is against the defendants.

I understood the counsel for defendants to urge, that the character of an act increasing the risk is to be determined from its result, from the consequences ensuing.

That any act increasing the risk might be in itself innocent, but if followed by a loss, it *then* became, in legal contemplation, an act of bad faith, and prevented a recovery on the policy. I cannot admit, and do not understand the authorities he cites to sustain such a proposition. They proceed on the ground that the act of increasing the risk is, *when done*, an act of bad faith; but unless a loss results from the act, there is no forfeiture of the right under the policy.

But, in their *legal* effect, the propositions do not differ. The result to the insured in a pecuniary point of view would be the same under the operation of either. The only advantage he could have under the former, would be to escape any unnecessary imputation of bad faith.

In addition to the reasons I have endeavoured to give, there are authorities both in England and in this country, an examination of which has satisfied my mind, and will, I think, clearly show that the plea in this case cannot be sustained. Among them I would refer to Dobson *vs.* Sotheby, 1 *Mood & Maek.* 90; 22 *E. C. L.* 260; Shaw *vs.* Robberds, 6 *A. & E.* 75, 33 *E. C. L.* 12–16; Pim *vs.* Reid. 6 *M. & G.* 46, *E. C. L.* 1–19–20; Columbia Ins. Co. *vs.* Lawrence, 10 *Peters* 507, 1 *Selden* 478 and cases cited; Williams *vs.* N. E. Mut. Ins. Co., 31 *Maine*, 219–227; Chandler *vs.* Worcester Ins. Co., 3 *Cush.* 328; Billings vs. Tolland Co. M. F. Ins. Co., 20 *Conn.* 139.

The demurrer to the plea is sustained.

TAFT for plaintiff.

HOADLY for defendants.