## THE HARTFORD STEAM BOILER INSPECTION AND INS. CO. *vs.* HENRY SONNEBORN & CO.

*Boiler Insurance—Explosion Causing Automatic Sprinkler to Damage Goods With Water—Proximate Cause.*

Plaintiffs' establishment was supplied with an automatic sprinkler system for putting out fire. This device consisted of pipes conveying water, having on them iron jets with glass heads soldered thereto with a solution arranged to melt at a certain degree of heat; when melted the heads fall from the jets and the water comes out. Some of these pipes and jets were in the basement of plaintiffs' building, near the boilers, when the defendant company issued its policy insuring plaintiffs "against all immediate loss or damage" to their property "caused by the explosion, collapse or rupture" of the boilers on the premises of the assured. One of the boilers exploded; the escaping steam melted the heads on the sprinkler system and the water so caused to flow damaged plaintiffs' merchandise. *Held*, that the defendant company is liable under the policy for the damage caused by the water as well as that caused by the steam, because the proximate and efficient cause of the damage by water was the explosion of the boiler.

Appeal from the Superior Court of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*John N. Steele* and *Albert Cabell Ritchie* (with whom were *Jno. E. Semmes* and *F. K. Carey* on the brief), for the appellant.

The appellant is only responsible for such immediate loss or damage caused by the explosion as was reasonably in the contemplation of both parties at the time the policy was issued, unless at such time there were special circumstances known to and understood by them that would take the case out of the general rule. A policy of insurance is a contract and an action upon an insurance policy is an action *ex contractu*. The measure of damages in actions upon insurance policies is the

same as in actions upon other contracts.   The measure of damages in actions *ex contractu* has been settled in Maryland ever since the case of *United States Telegraph Company* v. *Gildersleeve*, 29 Md. 232, 249.   The damages are ordinarily restricted to two kinds :   1. Such as may fairly and reasonably be considered as arising naturally, *i. e.*, according to the usual course of things, from the breach of the contract itself; or 2. Such as may reasonably be supposed to have been in the contemplation of both parties, at the time the contract was made, as the probable result of a breach.

It is also settled that no consequence, which is not the necessary or ordinary result of a breach, can be supposed to be contemplated by the parties, unless full information be imparted at the time.   In other words, if a contract is entered into with direct reference to some special circumstances fully known to and understood by both parties at the time the contract is made, then, in estimating the damages arising from a breach, these special circumstances may be considered.   But if there are no such special circumstances, or if the special circumstances, if any, were not fully known to and understoad by *both parties*, then the damages must be restricted to one or the other of the two kinds indicated above.   *Abbott* v. *Gatch*, 13 Md. 314, 333; *Telegraph Co.* v. *Gildersleeve*, 29 Md. 249; *Oil Company* v. *Schlens*, 59 Md. 45; *B. & O. R. R. Co.* v. *Pumphrey*, 59 Md. 390.

It will be observed that the measure of damages in an action *ex contractu*, such as the present one, differs materially from the measure of damages in an action of tort.   In tort, all the natural and proximate consequences may be considered, whether the particular injury or damage could have been foreseen or contemplated as the probable result of the act or not. *Railway Company* v. *Kemp*, 61 Md. 74, 81, 619; *Hussey* v. *Ryan*, 64 Md. 436; *Ryan* v. *Gross*, 68 Md. 377; *Railway Company* v. *Baer*, 90 Md. 97.

The explosion of the boiler was not the proximate cause of the loss due to water from the automatic sprinkler system. The principle is settled that the loss in insurance cases must

be *proximately* caused by the peril insured against, and the contract does not contemplate an indemnity to the assured where the peril is the *remote* cause of loss. By proximate cause is meant the active, efficient cause "that sets in motion a train of events which bring about a result without the intervention of any force started and working actively from a new and independent source." *General Mutual Insurance Company* v. *Sherwood*, 14 How. 366; see also *Potter* v. *Ocean Ins. Co.*, 3 Sumner, 27; *Miller* v. *Ins. Co.*, 31 Ia. 235. In *Dyer* v. *Piscataqua Fire and Marine Insurance Company*, 53 Me. 118, a vessel damaged at sea put into the port of Havana, where the master was obliged to sell part of the cargo to pay for necessary repairs. Subsequently the rest of the cargo was lost at sea. The Court held that the loss resulting from the sale of part of the cargo at Havana was not a loss coming within the terms of a policy insuring against the perils of the sea.

When the escaping steam damaged the goods with which it came in contact, and when it raised the temperature of the room to a height sufficient to fuse the sprinkler heads, and did actually fuse them, the results immediately traceable to the explosion of the boiler ceased. Assume that a skylight, or water pipe, had been broken by the explosion, and the goods had been damaged by rain falling through the skylight, or by water from the broken pipe ; clearly the appellant could not have been held liable, because such damage was due to an outside agency. And so in this case the damage caused by water from the sprinkler system was due to the intervention of an outside agency, put in motion, it is true, by the explosion, but working actively from a new and independent source. This agency caused a loss which could not, in the absence of special circumstances, have been contemplated by the parties as one of the probable consequences of an explosion. No argument is needed to show that the fusing of a sprinkler system is not the natural and ordinary consequence of an explosion. The explosion of itself simply *could* not have resulted in the kind of damage for which Henry Sonneborn & Co. seek to recover in this case. This damage would never have

been suffered at all had not a new and independent agency intervened. This is self-evident. Therefore, we submit, the appellant cannot be liable for this loss, unless the evidence presents some special circumstances sufficient to take the case out of the general rule. *Cal. Ins. Co.* v. *Union Co.*, 133 U. S. 387.

In *Kattelmann* v. *Fire Association of Philadelphia*, 79 Mo. App. 447, the facts presented a much stronger ground for relief than the case at bar. Here the defendant had insured the plaintiff's store and dwelling against "direct loss or damage caused by lightning." The Court held that if the lightning first struck the ground, and thus caused a concussion or shock of such violence as to injure the building, there could be no recovery. Such damage would have been caused, not by the lightning, but by the shock. "If the discharge caused a jarring of the ground, and the latter caused damage to the building, then, in such case, the policy provides no indemnity for such damage or loss. It provides indemnity only for direct loss caused by lightning." See *Beakes* v. *Phœnix Insurance Company*, 143 N. Y. 402.

In *Caballero and Basualdo* v. *Home Mutual Insurance Company*, 15 La. Ann. 217, an action on a fire policy, the Court held that where fire did not happen on the premises insured, but broke out in a building about two hundred feet distant, causing an explosion of gunpowder, which by the concussion of the air injured the building insured, the loss was not within the reasonable intendment of the parties. In such case the concussion of the air was the direct cause of loss, and the fire the remote cause. And see *Everett* v. *London Assurance*, 19 C. B. S. 126; *Insurance Company* v. *Transportation Company*, 12 Wallace, 194.

There are two lines of decisions which, while readily distinguishable from the case at bar, are yet of sufficient importance to merit consideration. 1. The first is well illustrated by the case of *Trans-Atlantic Fire Insurance Company* v. *Dorsey*, 56 Md. 70. This was an action upon a fire insurance policy which contained an exemption from liability for

explosion. This Court held that where a fire had occurred, and is in progress, the effects of which are covered by the policy, and an explosion takes place as an *incident or result thereof*, so as to increase the loss, the whole of the damage thus produced is within the protection of the insurance. The Court said : "In such case the fire is the direct and efficient cause of the loss, and the explosion but the incident, and if the insurers intend to exclude such liability, they must do so by plain and unambiguous terms." Here it will be observed the explosion is not the intervention of a new and independent agency. It is simply one of those consequences which may ordinarily be expected to ensue from the happening of the peril insured against. It is one of the natural results of fire. To hold the appellant liable for the loss caused by water from the sprinkler system would be to hold it liable for the consequences of a new, outside agency, in no way connected with and not naturally resulting from, the peril insured against. See *Scripture* v. *Lowell Co.*, 10 Cushing, 356; 3 *Joyce on Ins.*, sec. 2771.

2. It is held that a fire insurance policy covers loss caused by water used to extinguish fire. *Merchants' and Miners' Transportation Company* v. *Associated Firemen's Insurance Company*, 53 Md. 460. Here again the water is not a new and independent agency, as those words are understood in insurance law. It is the duty of the assured, not only for his own protection but in the interest of the insurer as well, to do all he can to prevent or diminish loss. Both parties understand this, and they know that if a fire breaks out, the proper measures will be taken to arrest the flames. The most effective of all measures is water. As said by this Court in the case last cited, the insurer is liable for damages caused by water used to extinguish the fire, because "the law presumes that the parties, from the very nature of things, must have contemplated the *natural and physical consequences* resulting from the peril insured against." On principle and authority, the damage due to water from the automatic sprinkler was proximately caused by the intervention of a new and indepen-

dent agency, and only remotely by the explosion of the boiler; and that this damage could not have been in the contemplation of both parties at the time the policy was issued as a probable result of an explosion, and therefore, the appellant cannot be liable for it, unless the case contains some special circumstances which take it out of the general rule.

There are no special circumstances in this case which make the loss caused by water from the automatic sprinkler system a proper element of damage.

In the first place, it cannot be said from the evidence that the sprinkler system is in such common and general use among clothing and mercantile establishments that boiler underwriters must be held to contemplate the fusing of sprinklers as one of the ordinary and probable results of an explosion of the boiler insured, nor is there any evidence that such an explosion will necessarily fuse automatic sprinklers.

It appears from the testimony that no universal or even general custom exists among mercantile establishments to have the sprinkler system, but that each dealer determines for himself whether or not he will have it, and his decision will rest upon a calculation as to whether or not the reduction in premiums which the fire insurance companies allow in case the system is installed, will compensate for the expense of putting the system in. Since the above evidence is not legally sufficient to establish any general custom among clothing or mercantile establishments in the city of Baltimore or throughout the country with reference to the use of the automatic sprinkler system, such evidence was *res inter alios* and inadmissible, and the appellant's first, second and third exceptions should be sustained. It being therefore clear that the use of the automatic sprinkler system among clothing and mercantile houses is not so general as to bind companies writing boiler insurance with knowledge that the fusing of sprinklers will be one of the probable results of an explosion of the boiler, are there any special circumstances in this case sufficient to show that in writing this particular contract of insurance the appellant must have contemplated the fusing of the sprinklers, and the damage result-

ing from the consequent downpour of water, as one of the ordinary and probable results of an explosion. *Hadley* v. *Baxendale,* 9 Exch. 354; *Ice Co.* v. *Arctic Mfg. Co.,* 79 Md. 106; *Webster* v. *Woolford,* 81 Md. 329.

Assuming, therefore, that the loss due to water from the automatic sprinklers is not, in the absence of special circumstances, a proper element of damage in this case, then, in order to enable the Court to consider this damage, the appellee must show that the contract of insurance was entered into by both parties with full knowledge of the existence of the sprinkler system in the basement of the appellees' premises, and that the fusing of the sprinklers was contemplated by the parties as a probable result of the explosion of the boiler. In other words, the appellee must show that by virtue of the special circumstances under which this particular policy was issued, both parties contemplated damage by water from the sprinkler system as one of the consequences which would probably ensue from the happening of the peril insured against. The appellees failed entirely to meet this burden.

*Leon E. Greenbaum* (with whom were *Louis E. McComas* and *George R. Gaither* on the brief), for the appellees.

The principal, if not the sole question in this case is as to the construction of the policy of insurance sued on, and this question as directly raised by the prayers is as to whether liability for " immediate loss or damage," which are the words used in the policy in evidence in this case, is at an end or still exists when the loss is not due to physical contact of the cause insured against with the thing insured, but is occasioned by the physical contact of a cause which is set in motion by the original cause insured against, without the intervention of a new cause springing from an independent source; or stating the same question in another way, the inquiry is whether, if the chain of causation is perfect from the point of view of science, the use of the word " immediate " will create a break from the point of view of law and render consequences which are the natural outcome of the original cause, too " remote " to be the subject of a judicial consideration.

It is a perfectly well settled doctrine that all insurance policies are construed against the company and in favor of the insured that the clear intention of the parties will not be frustrated by the use of a particular word. And in reference to the word "immediate," the Court of Appeals of this State has already decided that its use in a clause in a fire insurance policy must have a reasonable interpretation when the word is used in reference to time. *Rokes* v. *Amazon Ins. Co.,* 51 Md. 512. The same construction has been placed upon the use of the word "immediate" when used in reference to "loss and damage." *New York Express Co.* v. *Traders' Co.,* 132 Mass. 377; *Ermentrout* v. *Girard Fire Ins. Co.,* 63 Minn. 308.

It is true that in *Cal. Ins. Co.* v. *Union Compress Company,* 133 U. S. 415, there is an intimation to the contrary, but the expression of the Court was clearly *obiter,* and was not only not based on authority, but has never been since considered as a statement of the true doctrine. In that case the sole question before the Court was whether a fire insurance company was relieved of liability because the fire was caused by the negligence of the employees of the insured. The fire, which was the destroying agency, came *into actual physical contact with the property destroyed.* It was therefore totally outside the controversy as to the effect of the policy if there had not been such physical contact, and not a single authority was cited to sustain the contention that an agency becomes legally remote merely because it is not in physical contact. As a matter of fact, every modern authority on the subject of insurance is at variance with this *obiter dictum,* which would relieve fire insurance companies if the damage were done by smoke or heat arising from the fire, or by water used to extinguish the flames, or by the tottering of walls, or by any other of the many disastrous results of a conflagration besides the mere ignition due to the flames. *May on Insurance,* 412–418.

The Supreme Court very correctly says the question of liability is to be determined by the question of remoteness of agency *vel non.* Upon that test, the appellee in this case is

willing to stand or fall, but the error into which the Supreme
Court fell in its *obiter dictum* was in the illustrations it gave of
such remoteness.   That the criticism of the foregoing opinion
is well justified, is shown by the language of the Court in
*Ermentrout* v. *Girard Fire Ins. Company*, 63 Minn. 306, in
which the Court says in reference to 133 U. S. 415:   "The
question was not before the Court, for in that case the insured
property was physically burned by the direct action of fire.
If the Court meant what counsel claims, we cannot avoid the
conclusion that the illustration was, to say the least of it, an
unfortunate one."

If any importance is to be attached to the mere language of
the policy, then such stress is more appropriately to be laid
on the exceptions expressly made to liability for the excep-
tions best establish the scope of the policy.   Applying this
test to the case at bar, it will be found that the policy covers
"all immediate loss or damage except by fire caused by the
explosion of the steam boiler;" inasmuch as technically a
steam boiler is merely an iron apparatus enclosing water and
steam, and inasmuch as the physical action of either water or
steam can never result in fire, it is clear that the policy as
construed by the insurance company itself contemplates
a furnace adjacent to the boiler and containing coal, and that
the insurance company would be liable for all the reasonable
and natural consequences of the explosion of the boiler, irre-
spective of the fact as to whether the boiler or any part of it
came into immediate physical contact with the object dam-
aged.   If "immediate" is used in its narrowest sense, damage
by fire can never be the immediate result of the explosion of
a boiler ; therefore, if the insurance company expressly except
damage by fire it shows conclusively that it did not itself inter-
pret the word "immediate" in any such sense, but that natural
consequences were considered to be immediate consequences.
As to proximate cause, see *B. & P. R. Co.* v. *Reaney*, 42
Md. 117; *Ry. Co.* v. *Kemp*, 61 Md. 74; *Steel Co.* v. *Marney*,
88 Md. 495; *Transatlantic Co.* v. *Dorsey*, 59 Md. 70.   In this
last case a fire insurance policy had been issued which con-

tained a clause from exemption of liability for any loss due to explosion, and yet the Court held that when a fire occurred and an explosion takes place as a result of such fire, that the whole damage was within the protection of the insurance, *even though the fire itself did not consume or even injure by contact the premises insured.*

The explosion of the steam boiler was the proximate cause of the damage done to plaintiffs, just as fire was the direct and efficient cause of the damage done to Dorsey in the case in 56 Md. The test in both cases is not as to when the damage occurs or to whether intermediate phenomena manifest themselves, but whether such intermediate causes arise from independent agencies which would have appeared and developed, even though the original cause did not exist, or whether from first cause to last effect no new factor appears of an independent origin.

The insurance company knew, or by the exercise of reasonble care might have known, that the automatic sprinkler system was installed on the premises of the plaintiffs in close proximity to the boilers. The most casual inspection of the premises revealed it, and the company ignored or was indifferent to the fact that the natural and indeed the inevitable consequences of the escape of steam from the boilers would be the melting of the stops of the sprinkler system and the consequent escape of water. Surely it cannot be allowed to take advantage of its own negligence or carelessness. As the Court below said in its oral opinion : "It was impossible that any explosion should have occurred without having the effect of melting the soldering of the sprinklers which were set to a lower degree of heat than boiling water, and the inevitable result of such melting would be the release of water. "It is not necessary that the parties should have had actually in contemplation such an injury resulting from such an event, for it was the natural and inevitable consequence thereof, and therefore must be presumed to have been within their contemplation." As to what are the inevitable consequences of a boiler explosion, see further—*St. John* v. *American Ins. Co.,*

11 N. Y. 516; *Renshaw* v. *Fireman's Ins. Co.*, 33 Mo. App. 403.

In *Lynn Gas Co.* v. *Mcrriden Ins. Co.*, 158 Mass. 570, the fire caused a "short circuit" of an electric current, the short current in turn caused an excessive amount of electricity to be forced into the machinery, which was in a totally different part of the building from where the fire occurred; the fire did not touch the machinery, and yet the Court held that under these circumstances the injury to the machinery was a loss or damage by fire. The Court, after a full discussion of the question of proximate cause, and after stating that the "active and efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started, and working actively from a new and independent source, is the direct and proximate cause," concludes its opinion, on page 577, by stating: "In the present case the electricity was one of the forces of nature—a passive agent working under natural laws—whose existence was known when the insurance policies were issued. * * * No new cause acting from an independent source intervened. The fire was the direct and proximate cause of the damage, according to the meaning of the words 'direct and proximate cause,' as interpreted by the best authorities."

It is therefore contended that the use of the word "immediate" in the policy of the Hartford Insurance Company, does not limit its liability; that in all insurance policies the loss is limited to such as has for its direct cause the agency insured against; that loss thereby caused and not springing from an independent cause is "immediate" loss, and that the proximate cause of all the damage done to plaintiffs, was the explosion of the boiler, and that, therefore, the judgment should be affirmed.

BRISCOE, J., delivered the opinion of the Court.

This is an action on an insurance policy issued by the appellant company to the appellees to recover loss and damage to the property of the assured, contained in certain premises

occupied by the appellees as a wholesale clothing house, at the corner of Eutaw and German streets, Baltimore, caused by the explosion of a steam boiler, insured therein.

The policy of insurance sued on is dated the 25th of August, 1899, and insured the appellees " against all immediate loss or damage, except by fire, to the property of the assured, or to property of others for which the assured may be liable, wherever located, caused by the explosion, collapse or rupture of either of two horizontal steam boilers, on the premises of the assured."

The plaintiff alleges in the declaration, as the cause of the accident, that on the 4th day of April, 1902, while the policy was in force, the cast iron elbow of the blow pipe of one of the two boilers which were insured, and which were in the cellar of the building, exploded, and in consequence thereof large quantities of heated steam escaped and damaged the property in the cellar of the building.   It also states as a further and immediate consequence of the escape of the steam that the heads of certain sprinklers in the automatic sprinkler system in the cellar were melted and large quantities of water escaped through these heads and damaged certain merchandise of the plaintiff, whereby loss and damage were incurred to the amount of $2,140.85.   By a bill of particulars filed by the plaintiffs on demand, it appears that one-half of the loss was caused by the escape of heated steam from the blow pipe, and the remaining one-half by the escape of water through the heads of the automatic sprinkler system.

The defendant in the case concedes its liability under the policy of insurance for loss directly caused by the steam, but resists payment for the loss caused by water from the automatic sprinklers.

There were two questions submitted to the Court below and they were : first, what amount of damage was caused by steam and what by water from the sprinklers ; second, is the defendant liable at all under the policy for loss caused by the water.

The proof in the case, we think, was amply sufficient to sustain the conclusion reached by the Court below upon the first question, but being one of fact it is not before us for review.

The second and controlling question depends for its solution upon the construction to be placed upon the words "immediate loss or damage" used in the policy of insurance, and is distinctly raised by the prayers in the case. The Court ruled by the plaintiff's prayer that under the evidence the defendant was liable for the loss and damage caused by the contact of the steam and water from the boiler with the merchandise, and also for the damage by the water escaping from the sprinkler system.

The defendant's prayer, which was rejected by the Court, submitted the proposition that the plaintiff was not entitled to recover under the policy for the damage done by water from the sprinklers.

Now it would extend this opinion beyond what is necessary to review in detail all of the evidence submitted in the case and in view of the well-settled decisions of this Court to go into an examination of those from other States cited in argument. The undisputed facts show that the explosion of the boiler in the cellar was the direct and efficient cause of the damage and loss to the property. The escaped steam from this boiler, by reason of the heat, melted the solder on the sprinkler heads and set in motion the water which caused the damage. The witness, Sonneborn, testified that there was in the basement of the building at the time he moved into it and when the policy was effected, what is known as the automatic sprinkler system for the extinguishment of fire, and this system was almost indispensable in mercantile establishments. He described it as consisting of a series of pipes which run along the ceiling; that these pipes are charged with water and are fitted out with iron jets with glass heads on them; that the heads are soldered with a certain solution which will melt at a certain degree of heat; that as soon as the solder is melted the glass heads fall off, thus opening the jet and permitting the water to come out and fall on merchandise below, protecting it from fire, and that escaping steam would be hot enough to melt the solder. And it is admitted that the damage to the property was occasioned in two ways, first, by the

steam acting immediately upon the goods themselves; and secondly, by acting immediately upon the sprinkler system.

While the appellant concedes its liability for the loss caused by the explosion of the boiler, it is urged in argument that between the explosion of the boiler and the damage caused by water from the sprinklers there intervened a new and independent agency, to wit, the automatic sprinkler system and the damage caused by the water was immediately and directly due to this independent agency and only remotely to the explosion of the boiler. The appellant's position under the facts and circumstances of the case at bar we do not think is supported by the rules of construction applicable to policies of insurance containing a similar clause of indemnity, as stated by the cases and authorities. The word "immediate" used in reference to "loss and damage," in a policy of insurance must be given a reasonable construction, and it is held to mean direct or proximate cause as distinguished from a remote cause. *Rokes* v. *Amazon Ins. Co.*, 51 Md. 512; *New York Express Co.* v. *Traders' Co.*, 132 Mass. 377; *Ermentrout* v. *Girard Fire Ins. Co.*, 63 Minn. 308.

The rule as to the determination of what is proximate and remote cause has been the cause of much legal refinement, and has frequently been applied in this Court. It was expressly said in the case of *B. & P. R. R. Co.* v. *Reaney*, 42 Md. 117, that Courts adopt the practical rule that the efficient and predominating cause in producing a given event or effect, though there may be subordinate and dependent causes in operation, must be looked to in determining the rights and liabilities of the parties concerned. In the case of *Transatlantic Fire Insurance Co.* v. *Dorsey*, 56 Md. 80, a somewhat analagous case, where a suit was brought on a policy of insurance against loss by fire, and the policy contained an exemption from liability by explosion of any kind, unless fire ensues, and then for loss by fire alone; it was held, "that upon reason and the established rules of construction, that such loss should be regarded as within the risk assumed by the insurers. In such case the fire is the direct and efficient cause of the loss, and

the explosion but the incident, and if the insurers intend to exclude such liability, they must do so by plain and unambiguous terms."

The proof in that case showed that the fire originated in consequence of a violent tornado blowing the fire through the steam drum, and so bringing it in contact with escaping gases and air, causing by the fire an explosion.

In the case at bar the existence of the automatic sprinkler in the cellar was known to the company at the time of the issuing of the policy of insurance, and the outpouring of the water from the sprinklers was the inevitable consequence of the explosion of the boiler. The active and efficient cause, that put in motion the water was clearly the heat from the explosion and not the intervention of any new and independent agency. The explosion of the boiler was, therefore, the direct and proximate cause of the damage and this cause being within the clause of the policy which insured against "all immediate loss and damage, except by fire," the appellants are liable for the risks assumed under the policy.

We find no such error in the rulings of the Court on the bills of exceptions, relating to the admissibility of evidence as would entitle the appellants to a reversal of the judgment, and for the reasons given it will be affirmed.

*Judgment affirmed with costs.*