KENNEY, JR. v OCCIDENTAL INS.
COMPANY, etc.

KENNEY, JR. v HARTFORD FIRE
INSURANCE CO., etc.

KENNEY, JR. v PHOENIX-ASSURANCE
CO. LTD., OF LONDON, etc.

KENNEY, JR. v WORLD FIRE AND
MARINE INSURANCE CO., etc.

Ohio Appeals, 1st Dist, Hamilton Co.

Nos. 5791, 5792, 5793 & 5794.
Decided June 10, 1940.

Lorbach & Carver, Cincinnati, for appellee.

Harmon, Colston, Goldsmith & Hoadly, Cincinnati, and J. L. Kohl, Cincinnati, for appellants.

## OPINION

By HAMILTON, PJ.

These law suits were tried together by the trial court, without the intervention of a jury. They involved the liability on four policies of tornado insurance.

It appears from the record that the plaintiff was the owner of a barge, which he had purchased for the purpose of constructing and establishing a so-called night club and barge to be tied up on the Ohio River bank. He constructed on the barge a superstructure in the form of a dance floor, with equipment for refreshments and orchestral accommodations. He moored the barge on the Ohio side of the river, at the foot of Main or Sycamore Streets.

Through an agent, authorized to solicit insurance, plaintiff took out four joint fire and tornado insurance policies; two for $1000 each and two for $500 each.

Separate suits were filed, as above indicated, against each of the insurance companies for the amount named in the policy.

The trial resulted in a judgment for the full amount of each policy in all of the cases.

Appeals on questions of law were taken to this court by the insurance companies, defendants, and since they involve the same questions of law and the same assignments of error, they were presented together and are considered together in this court.

The cases were heard in the trial court on the petitions and amendments thereto and the answer of the defendant in each of the cases.

The policies each contained the following provisions:

" * * * the two story frame approved roof barge, including plumbing, electrical wiring and stationary heating, lighting, ventilating and refrigerating equipment and apparatus and fixtures therein, signs and awnings, door and window screens, storm doors and windows belonging to the above described building, while attached thereto or stored therein; stationary scales and elevators and all permanent fixtures belonging to and constituting a part of said building, situated on the Ohio River at the foot of Main Street, Cincinnati, Ohio, and occupied principally as a Dance Hall."

"It is understood that awnings are excluded from coverage under tornado contract."

"against all direct loss or damage by windstorm. cyclone and tornado, except as hereinafter provided, * * * to the following described property while located and contained as described herein, and not elsewhere."

"* * * nor for loss or damage occasioned directly or indirectly by or through any explosion, tidal wave, high water, overflow, cloudburst, theft; nor for any loss or damage, caused by water or rain, whether driven by wind or not, unless the building insured, or containing the property insured, shall first sustain an actual damage to the roof or walls by the direct force of the wind, and shall then be liable only for such damage to the interior of the building or the insured property therein, as may be caused by water or rain entering the building through openings in the roof or walls made by direct action of the wind, or by water from sprinkler or other piping broken by such damage to roof or walls."

"* * * nor for consequential loss or damage of any kind, * * * "

"Except as limited or changed by the conditions herein provided as applicable to windstorms, cyclones and/or tornadoes, lines 1 to 112 inclusive of this policy as set out above, are adopted herein and made a part hereof, and wherever the word 'fire' occurs, it shall be held to mean 'windstorm, cyclone and/or tornado.' "

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge. and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a

copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of fire; * * *"

The salient facts are as follows:

On January 28th, 1934, a windstorm, varying in velocity from thirty to thirty-five miles an hour, about eight o'clock in the evening, struck the vicinity of Cincinnati and the territory where this barge was moored, breaking the chain cables, and driving the barge southwardly across the Ohio River to the Kentucky shore, and driving the boat up on a sand bank and stranding it. The owner of the boat, and some men under his direction, attempted to get the barge back into the river by man power, but were unable to make any progress. The barge and its equipment was in practically an undamaged condition, with the exception of some broken glass and light injury, amounting to One Hundred Dollars, which damage was caused when the barge came into collision with a boat in the same locality. Aside from this injury, it was in the same condition as when moored to the Ohio side of the River before the windstorm.

After notifying the agent, who was instrumental in procuring the policies of insurance for the plaintiff, which notice was given on the day following the windstorm, the plaintiff sought assistance from other steamboat men on the River and from the Government equipment on the River to get the boat off the sand bank and into the channel, but was unable to get any assistance.

The agent for the companies viewed the boat on the day following its stranding, and when requested by the owner to get the boat off the Kentucky bank, denied liability, indicating that the barge was only covered by the insurance while moored to the Ohio shore, and that there was no liability

on the Insurance Companies when the barge was on the Kentucky shore no matter how it had gotten there.

The owner insisted that the Insurance Companies get the boat off and pay the damage.

After offering to pay the slight damage shown which was caused by the collision, Ankerbauer, the Insurance Companies' agent notified the A. W. Schell Company, the insurance brokers, which company in turn notified the Western Adjustment Company, which company was in charge of adjustment of losses for the defendant insurance companies. The Adjustment Company sent its employee or adjuster to examine the situation and report. McClain, the adjuster, said they would admit liability for part of the plaintiff's loss, but after continuing negotiations for a few days, McClain denied liability on the part of the company for total loss of the barge and dance hall, which the plaintiff was claiming, and he, McClain then said that "he washed his hands of the whole matter".

Aside from the complaint that the court below erred in the admission and rejection of some minor items of evidence, the real question of error presented is that no sworn statement constituting a claim was filed within 60 days following the accident. On this question, it appears that the sworn statement provided for in the policy was not filed within 60 days following the accident. It appears that there was a sworn statement in the form required by the policy, filed some two or three days after the expiration of the 60 day limit. But, it is claimed that this requirement was waived under the circumstances by the company under the facts and circumstances as stated above, through its agents and adjusters. Moreover, it is claimed that the denial of any liability and the refusal to pay within the sixty days would, under the law, make it unnecessary to file any claim.

On this proposition the facts surrounding the action of the parties and the necessity for filing the sworn proof of claim within the 60 days is answered in the case of **Lind v State Automobile**

Mutual Ins. Assn. et 128 Oh St 1. The third paragraph of the syllabus is:

"The authority of an agent, to waive such subsequent proofs and notices, may be established by showing a course of conduct on his part, knowingly permitted by his insurer-principal, through which an agent has the apparent power to accomplish those things he undertakes to do, so that an assured dealing with him is given reasonable grounds for believing he possesses such power."

Our conclusion is that the plaintiff did not lose his rights under the policies by reason of not filing the proof of claim within the 60 days following the accident.

The next contention is that the policy only insured the property in the State of Ohio, and only while located at its moorings in the State of Ohio, but that it did not cover the property across the river and the stranding of the same. In other words, the claim is that the loss or damage was not a direct loss by windstorm or cyclone, and did not occur while the barge was located at the place designated in the policies, to-wit: at the foot of Main Street in the City of Cincinnati.

On this question of whether or not the plaintiff's property was covered by the policies under the circumstances, we find it not without difficulty. There is no direct decision on the question in Ohio. This is not marine insurance. Another fact which makes the case somewhat difficult is that plaintiff abandoned the effort to get the barge off the sand bank, after making the efforts related heretofore, but some weeks later he was informed by the authorities of Kentucky to get the barge off the shore, out of the way. He thereupon dismantled the structure, removing the deck which enabled him to float the barge, and he then sold the barge to a purchaser, who put the same in service as a barge.

Was the plaintiff entitled to claim loss under the circumstances?

There are two circumstances under which a total loss can be claimed: (1) Where a catastrophe results in actual total loss; (2) Where the property is abandoned, as in this case, this method is referred to in the books as constructive total loss. The question arises as to the justification for abandonment, and if there was justification, was there any value in the salvage, which should be credited to the insurer, provided he pay the insurance.

In the cases under consideration there was no actual total loss.

As to whether or not there was constructive total loss by abandonment, it is difficult to say. The evidence as above stated is that he removed the super-structure and sold the barge for $300. Should this be a constructive abandonment with the salvage of $300, which should be credited when and if the Insurance Company pays the total loss. It seems that the insured property in this case could only be classified as a constructive total loss, with the money procured from the sale credited when and if the amount of the policies are paid in full. The only difficulty with this conclusion is that the evidence is that the barge and its equipment was worth a great deal more than the amount of the policies, so that the full payment of the policies would not, together with the $300 salvage, cover the loss and damage in full.

In 22 O. Jur. §623, liability under similar circumstances is discussed. The text states:

"Fundamentally, the proximate or direct and not the remote cause of the loss determines the liability of the insurer."

In support of this proposition, the text cites several lower court decisions in Ohio: **Miller v Western Farmers' Mut. Ins. Co., 1 Hand. 208, 12 O. Dec. Rep. 105.** See also: **German F. Ins. Co. v Roost, 55 Oh St 581.**

In the same section in 22 O. Jur., the author states:

"Again, when it is said that the cause. to be sought is the direct and proximate cause, it is not meant that the cause or agency which is nearest in point of time or place to the result is necessarily to be chosen, since there may be a dominant cause even though concurrent or remote in point of time or place. Furthermore, all consequential losses generally are regarded as the direct and immediate result of risk insured against when they result therefrom without the intervention of any other dominant cause."

"The question of proximate cause is generally held to be one for the jury."

The notes to this section refer on all these propositions to 6 Couch on Insurance 1465 et seq.

We are, therefore, of the opinion that the loss of this barge is a constructive total loss and is a consequential loss from the windstorm which was the proximate cause of the loss, and is a direct result of the risk insured against within the terms of the policy.

Appellants further suggest the point that there was a change of causes of action by reason of the change of the date of the accident from the 14th of February to the 28th of February. This amendment filed on the 28th would be after the time provided within which to bring such an action. It appears that there was matter in the original petition, filed within the time limit provided by law, which referred to the windstorm and loss occurring on February 14th. By an amendment later and more than a year after the occurrence of the accident the plaintiff amended the petition, pleading the true date of the occurrence of the accident. This was not a change of causes of action, and as stated in the case of **L. & N. R. R. Co. v Greene, 113 Oh St. 546,** was simply a pleading of a fact, and changing that fact from an incorrect to a correct date. This does not contravene the law as to amending pleadings, and no error intervened on that account.

We are, therefore, of the opinion that there was a total constructive loss in this case, which was covered by the policies in question and that under the law as to constructive total losses, the amount of $300 obtained from the sale of the barge should be pro-rated on the judgments obtained in the cases.

The judgments will be so modified, and, as modified, will be affirmed.

MATTHEWS & ROSS, JJ, concur.