## DIXIE PINE PRODUCTS CO. v. MARYLAND CASUALTY CO.
### No. 10479.

Circuit Court of Appeals, Fifth Circuit.
Feb. 6, 1943.
Rehearing Denied March 12, 1943.
Writ of Certiorari Denied May 3, 1943.

See 63 S.Ct. 1033, 87 L.Ed. ——.

584

T. J. Wills, of Hattiesburg, Miss., for appellant.

M. M. Roberts, of Hattiesburg, Miss., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

Appellant is engaged in the manufacture of wood products at Hattiesburg, Mississippi. On May 28, 1941, its buildings and equipment were severely damaged by an explosion followed by a fire. On that date it had a policy of insurance, issued by appellee, covering loss to the property directly resulting from an accident as defined by the policy, exclusive of loss from an accident caused by fire. Alleging that the explosion was an accident covered by the policy, this suit was filed to recover from the insurer the damages alleged to have resulted directly from it. The court below directed a verdict for the insurer, on the ground that the evidence showed without conflict that the damage resulted from an accident caused by fire within the exclusory provisions of the policy.

There is no substantial dispute as to how the accident occurred. The company maintained a system of extractors aligned in two rows of eleven each, linked by interconnecting pipes and heated by coils of steam pipes. The extractors were filled with particles of pine wood mixed in a highly volatile petroleum solvent that would dissolve and draw from the pine wood its rosin, turpentine, and pine oil. Steam was applied to the solvent to facilitate separation and precipitation of the component products in solution. The steam used to heat the solvent was generated in boilers located in an adjacent house. On the afternoon of the explosion, operations were progressing in the usual manner when, due to excessive pressure generated by heating the petroleum solvent within the extractor unit, a copper pipe attached to the top of one extractor was ruptured, and the solvent solution in the form of gaseous vapor was permitted to escape. The pressure within the extractor system forced the vapor through the fissure in large quantities; and, upon contact with the outer air, part of the vapor condensed to a liquid and part remained in gaseous form. Within thirty minutes the solvent overflowed the room, and the gas penetrated to the fire in the boiler, causing an explosion of such violence that window panes were shattered at a distance of three miles; fire naturally ensued.

The insurer covenanted to pay the assured for loss on its property directly damaged by an accident to an object described by the policy, exclusive of loss from an accident caused by fire or loss from fire. The policy listed the 22 extractors as unfired vessels, and defined the object with respect to unfired vessels to mean the complete group of such vessels including interconnecting pipes, gages, and safety valves; but inlet and outlet pipes were not included. An accident was defined to mean a sudden and accidental tearing asunder of the object, or any part thereof, caused by pressure of gas or liquid therein.

It is clear that the rupture of the copper pipe caused by gas pressure within the extractor system was an accident within the policy definition. Whether or not appellant was entitled to have the case submitted to the jury depended, in the first instance, upon whether the pipe so ruptured was an interconnecting pipe, and as such a part of the extractor vessel, or whether it was an outlet pipe excluded from coverage by the policy provisions. It appears from the evidence that this pipe was attached to the neck of the extractor whence it ran horizontally into a T-joint, thence vertically into a header containing three draw-off pipes leading to condensers. The pipe operated under the same pressure and contained the same ingredients as the extractor, was integral therewith, and was partly used as a conduit for passage of the solvent vapor from one extractor to others in the battery. Whether this was

an interconnecting or an outlet pipe was a question of fact concerning which the evidence conflicted; this conflict made an issue for the jury.

The policy insured against loss to property of the assured directly damaged by the accident, except damage done by fire, unless the accident was caused by fire. The accident was the rupture of the pipe; it was caused by pressure, not by fire. The damages sought are those caused by the explosion, as distinguished from those caused by fire, and the record contains abundant proof of such damage. This brings the issue to whether the explosion and the damages ensuing therefrom were attributable directly to the rupture of the pipe. No damages are sought for the fire that followed the explosion.

It is well settled that the words "direct cause" ordinarily are synonymous in legal intendment with "proximate cause," a rule applicable to causes involving the construction of an insurance policy.[1] If the damages complained of followed reasonably from the occurrence of the accident, and if no intermediate controlling and self-sufficient cause intervened, the damages resulted directly from the rupture in the pipe.[2] Applying these principles to the facts of the case, we hold that the court erred in directing a verdict for appellee. The accident occurred in the normal course of operations; the risk incident to the escape of the highly explosive solvent was one of the hazards primarily recognized and insured against; and the explosion resulting from the contact of the solvent with fire was a reaction as certain as the laws of chemistry. The fact that the explosion was touched off by fire is of no significance, since it was a friendly fire confined to and burning in a place where the parties contemplated it should be.[3]

For these reasons, the evidence made out a case for determination by the jury, the judgment appealed from is reversed, and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.

SIBLEY, Circuit Judge (concurring).

I concur in the judgment awarding a new trial because the case should have gone to the jury. I think, however, there are issues other than those indicated in the opinion. The boilers where the friendly fire was were in a separate building thirty feet from that where the extractors were giving off the combustible vapor. Twenty-five or thirty minutes elapsed between the time the escape of the vapor began and the time it reached the fire and caused the explosion. During this time the danger was foreseeable and was foreseen. The progress of the vapor was sought to be stopped by the use of fire hose to condense it, instead of simply putting out the fire. There may be reasons why the friendly fire could not have been extinguished, but the evidence is silent about them. I think there is a jury question as to whether neglect to extinguish the fire was the true direct cause of the explosion.

Again, there is evidence that a number of connected extractors were being filled with liquid to be heated, pumped in by a steam pump. There was no safety device to stop the pump if the pressure became too great, or to relieve the pressure otherwise, but the pump had to be stopped at the proper time by the operator. In this record the operator testifies he did shut the pump off, but there is testimony the pump was found wrecked from internal pressure, and not one copper pipe only, but several of the same sort, were found bursted, and several of the extractors had their doors cracked

---

1 Cook v. Continental, 220 Ala. 162, 124 So. 239, 65 A.L.R. 921; Kenny v. Occidental Ins. Co., 66 Ohio App. 284, 34 N.E.2d 237; Ermentrout v. Girard F. & M. Ins. Co., 63 Minn. 305, 65 N.W. 635, 30 L.R.A. 346, 56 Am.St.Rep. 481; Russell v. German Fire Ins. Co., 100 Minn. 528, 111 N.W. 400, 409, 10 L.R.A.,N.S., 326; Applebee v. Ross, Mo.Sup., 48 S. W.2d 900, 82 A.L.R. 288; 12 Words and Phrases, Perm.Ed., 444; Couch's Cyclopedia of Insurance Law, Vol. 6, Sections 1462-74.

2 United States v. Chicago, B. & Q. R. Co., 8 Cir., 82 F.2d 131, 106 A.L.R. 942.

Certiorari denied, 298 U.S. 689, 56 S.Ct. 957, 80 L.Ed. 1408; Champlin Refining Co. v. Thomas, 10 Cir., 93 F.2d 133; Freeman v. Mercantile M. A. Association, 156 Mass. 351, 30 N.E. 1013, 17 L.R.A. 753; Hartford S. B. I. Ins. Co. v. Sonneborn, 96 Md. 616, 54 A. 610; Couch's Cyclopedia of Insurance Law, Vol. 6, Sec. 1463.

3 German S. & L. Soc. v. Commercial U. Assurance Co., 9 Cir., 187 F. 758; First National Bank v. Royal Indemnity Co., 193 Iowa 221, 186 N.W. 934; Couch's Cyclopedia of Insurance Law, Vol. 5, page 4227.

outward and their riveted seams so strained as to require internal welding; so that the repairs to the extractors cost many thousand dollars. While not clearly presented by the pleadings, the evidence seems to me to present a reasonable issue as to whether those injured extractors, all being insured against accident from internal pressure, were not injured by over pressure, caused by the pump, or steam heat, or both, rather than by the external explosion, and before the explosion took place. The wrecked pump makes a sufficient contradiction of the employee who says he turned it off to make a jury issue.