(78 South. 232)

### WESTERN ASSUR. CO. v. HANN.
#### (6 Div. 511.)

(Supreme Court of Alabama. Dec. 20, 1917.
Rehearing Denied March 23, 1918.)

1. INSURANCE ⬤⟂427 — "DIRECT" LOSS BY
FIRE.

The word "direct" in a provision in a fire
policy that insurer should be liable only for "di-
rect loss by fire" means merely "immediate" or
"proximate" as distinguished from "remote,"
and means no more than the word "proximate"
in the law of negligence.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Direct.]

2. INSURANCE ⬤⟂668(10)—"DIRECT" LOSS BY
FIRE—QUESTION FOR JURY.

Where a wall stood four months after a fire
and was blown over onto insured's building by
the wind, held, under the evidence, for the jury
whether injury to insured was "direct" loss by
fire.

3. INSURANCE ⬤⟂640(3)—FIRE—PLEADING.

A demurrer to a plea in an action on a fire
policy that damage was caused by the falling of
a wall of another building was properly sustain-
ed, where the plea failed to aver that the wall
did not fall as a result of a fire.

4. APPEAL AND ERROR ⬤⟂1040(7)—HARMLESS
ERROR—SUSTAINING DEMURRER.

It was not error to sustain demurrer to
pleas where the matter of the pleas was fully
submitted under other pleas and in the instruc-
tions to the jury.

5. APPEAL AND ERROR ⬤⟂1061(4)—HARMLESS
ERROR—AFFIRMATIVE CHARGE.

It was not reversible error to refuse an af-
firmative charge as to a certain count, where the
court charged that the count was immaterial,
and that recovery could not be had thereon.

6. INSURANCE ⬤⟂668(4) — FIRE INSURANCE —
REMOVAL OF GOODS—QUESTION FOR JURY.

In action on fire policy, where goods were
damaged by falling of wall of an adjoining build-
ing previously burned, whether insured was
guilty of negligence in not moving the goods
from danger in accordance with the provisions
of the policy, held, under the evidence, for the
jury.

Sayre, J., dissenting.

Appeal from Circuit Court, Jefferson Coun-
ty; John C. Pugh, Judge.

Action by Charles Hann against the West-
ern Assurance Company. Judgment for
plaintiff, and defendant appeals. Affirmed.

Suit by appellee against the appellant up-
on a policy of fire insurance to recover dam-
ages for the destruction of his stock of goods
insured against loss by said policy contract.

The first count, as amended, sought re-
covery for the value of the stock of goods
consisting of shoes, etc., "which property
was destroyed or was damaged by fire which
occurred on, to wit, the 12th day of Decem-
ber, 1914." The second count was the same
as the first with the exception that it con-
cluded as follows: "Which property was de-
stroyed or was damaged by fire which occur-
red on, to wit, the 21st day of April, 1915."

Numerous pleas were filed by defendant.

Plea 1 was the general issue.

Plea 2 set up the following provision in
the policy:

"If a building, or any part thereof, falls, ex-
cept as the result of fire, all insurance by this
policy on such building or its contents shall im-
mediately cease"

—and then alleged that the building in
which the property was insured was located
did fall prior to the destruction thereof, and
that the fall of the building was not the re-
sult of the fire. Issue was joined upon this
plea.

Plea 3 was in substance the same as plea
2, with the exception that it failed to allege
that the falling of the building was not the
result of the fire, and demurrer to this plea
was sustained.

The fourth plea set up that the policy in-
sured the property "against all direct loss
or damage by fire," and that the property
was not damaged or destroyed directly by
fire, but by the falling of the wall adjoining
thereto, and extending above the building
which contained the property insured, which
said wall fell upon the building, causing the
loss; and that the falling of said adjacent
wall was the direct and proximate cause of
the destruction of the property. Demurrer
to this plea was overruled.

Plea 5 set up the same provision of the
policy as copied in the second and third
pleas, and further alleged that the falling of
the building was caused by an adjacent wall
falling thereon; but the plea did not allege
that the wall did not fall as the result of
fire.

This also applies to plea 6, which is sub-
stantially the same as plea 5, except that it
is more elaborately stated.

Pleas 7, 8, and 9 set up in varying lan-
guage practically the same defense upon the
following facts, briefly stated: Plaintiff in
this cause had instituted in the District
Court of the United States a suit claiming a
recovery of Mrs. Lucy P. Hudgins, the own-
er of the building adjacent to that in which
plaintiff's property was located, for the loss
and destruction of the property described in
the policy of insurance, and that in said
suit plaintiff alleged that the property was
destroyed by the falling of an adjacent five-
story wall, and the falling of said wall was
the proximate consequence of the negligence
of the owner of said wall, to wit, Mrs. Lucy
P. Hudgins; that said suit was prosecuted
and a judgment recovered against the said
Mrs. Hudgins in the sum of $15,163; that
by reason of the institution of this suit
counting for recovery upon the negligence of
Mrs. Hudgins, and the recovery of a judg-
ment in his favor, the plaintiff is precluded
by said judgment and recovery, and is estop-
ped to claim that the damage to the prop-
erty covered by the policy sued on was caus-
ed by fire.

The tenth plea set up the provision in the
policy which gave to the insurance company
the right to be subrogated in certain events
as follows:

---

"If this company shall claim that the fire was caused by the act or negligence of any person, or corporation, private or municipal, this company shall on payment of the loss, be subrogated to the extent of such payment, to all rights of recovery by the insured, for the loss resulting therefrom, and such right shall be assigned to this company by the insured, on receiving said payment."

The plea then alleged the suit against Mrs. Hudgins, and the judgment recovered, and that by reason thereof defendant had been deprived of the right of subrogation, and is therefore relieved of all liability under the policy. The plea did not allege that the judgment had been paid or satisfied in any manner, or that defendant had made any payment in regard to the loss.

Plea 11 set up, in substance, the same facts as were contained in pleas 7, 8, and 9, and concluded by averring that by bringing such suit the plaintiff had elected to proceed against Mrs. Hudgins as the person liable for such loss, and was bound by such election.

Demurrer was sustained to pleas 7, 8, 9, 10, and 11.

Plea 12 set up the following provisions in the policy:

"This company shall not be liable for loss caused, directly or indirectly, by the negligence of the insured, to use all reasonable means to save and preserve the property at and after a fire, or when the property is endangered by fire in neighboring premises."

The plea then averred that on December 12, 1914, a fire occurred in the building adjoining, and there remained standing a five-story brick wall which on April 21, 1915, fell upon the building in which the property insured was located, causing the damage thereto, and that the plaintiff breached the warranty above set out, in that plaintiff did neglect to use all reasonable means to save and preserve the property insured at and after the fire in said neighboring building on December 12, 1914, and that by reason of such breach plaintiff is not entitled to recover.

The action of the court in sustaining demurrer to pleas 13 and 15 is not insisted upon in argument of counsel for appellant.

Plea 14 set up the same provision as contained in plea 12, alleging that plaintiff negligently failed to use any reasonable means to save and preserve the property, in this, that the plaintiff negligently failed to remove said property from said building, which was, as above set out, endangered by said unsupported five-story wall. Issue was taken upon pleas 12 and 14. The cause was tried upon the plea of the general issue and upon the joinder of issue upon the second, fourth, twelfth, and fourteenth special pleas.

The case was submitted to the jury upon the testimony introduced by plaintiff, defendant offering no testimony.

Some of the salient features of the evidence may be briefly outlined as follows: The policy of insurance sued upon insured plaintiff for a period of one year "against all direct loss or damage by fire," to an amount not exceeding $2,000, to the property described therein, consisting of his stock of goods and merchandise, and contained, among other provisions, the following:

"This company shall not be liable for loss caused directly or indirectly by invasion * * * or by negligence of the insured to use all reasonable means to save and preserve the property at and after the fire, or when the property is endangered by fire in neighboring premises." "If a building, or any part thereof, fall, except as a result of fire, all insurance by this policy on such building, or its contents, shall immediately cease."

Plaintiff, at the time of the fire, was the owner of a retail shoe store in the city of Birmingham on Second avenue between Nineteenth and Twentieth streets, the storehouse occupied by him being a three-story structure and referred to as the Hann Building. Adjacent thereto, and immediately west thereof, was located a five-story brick store, owned by Mrs. Lucy P. Hudgins, formerly occupied by the Steele-Smith Dry Goods Company, and which is referred to as the Steele-Smith Building. On December 12, 1914, there was a fire in the Steele-Smith Building, which resulted in its destruction, and at which time the west wall of said building fell, and the east wall remained standing, the entire interior of the building being destroyed, the roof also. The east wall which remained standing was 140 feet long and 70 feet high, and rose above the building occupied by plaintiff something over two stories. The wall abutted the Hann Building, and there were no openings in said east wall. That in the Steele-Smith Building on the fourth and fifth floors there was 10 or 12 feet of the floor joist left from the front part of the building, and beyond that they were all gone. The Steele-Smith Building was 50 feet wide, and after the fire there were left floor joists extending from the front of the building to about half the length of the building, connected by columns. The joists rested on these columns, and the other ends were mortised into the east and west wall; that is, that portion of the west wall left standing. On the fourth floor these floor joists extended for a distance of about 30 feet from the front of the building, and on the fifth floor for about 15 feet. After the fire the front and rear walls of the Steele-Smith Building were left standing, and to this front and rear wall the east wall was tied in the natural erection and construction of said building. The east wall was left without any support or protection as a result of the fire on December 12, 1914, and without any shouldering other than its connection with the front and rear walls of the said building, and the floor joists on some of the floors above mentioned. The fire in the Steele-Smith Building destroyed the entire stock of dry goods therein contained, and was a very hot fire; that the fire burned all night, and that all the floorings were burned

out; a great deal of water was poured into the building and onto the walls, and that the roof either burned through or fell in; that the elevators in the building were on the west side, and it was the west side which fell on December 12, 1914, the hottest part of the fire being on the west side, on account of the draft created by the elevator shaft; that a large portion of the center part of the west wall fell at the time of the fire, and there was left in the west wall a V-shaped opening; that some of the plastering on the east wall was left, but not much of it. On April 21, 1915, the east wall of the Steele-Smith Building fell over upon the Hann Building occupied by plaintiff, resulting in the destruction of his stock of goods, falling through the roof to the ground floor. After the falling of this east wall there was a fire in the Hann Building which was under control in about 15 minutes, the fire being confined to the rear of the building, doing some damage, and that three lines of hose were put into the building, one through the front and the other two through the rear. That water was played on the Hann Building for a period of about 20 minutes, but that the fire in that building was small.

There was evidence tending to show that April 21, 1915, the day the east wall fell, was "a stormy gusty day"; that the wind was blowing pretty strong that day. The east wall in falling made about the same character of opening as was made by the west wall. December 12, 1914, the day when the Steele-Smith Building was burned, was cold, the cold weather continuing for several days, and another cold spell in February, 1915.

Plaintiff did not reside in Birmingham, and one McLeod as manager was in charge of the store, and had been for a number of years, and who was killed by the collapse of building. The evidence tends to show that McLeod's attention was called to the east wall standing about the Hann Building for a period of four months, and that he did not move the stock of goods or prop up the east wall. McLeod had no connection with the Steele-Smith Building, the east wall of which remained standing until its fall April 21, 1915, but the evidence tends to show that he consulted the city inspector in regard to the safety of said wall, and that the inspector told him there was no danger. The chief of the fire department of Birmingham testified that after the fire of December 12, 1914, he examined the walls of the Steele-Smith Building, and that in his opinion they were in a safe condition; that according to his eye the wall was plumb; that the east wall was safe from any ordinary wind or anything like that, and that, in his opinion, a wall exposed to the weather would grow weaker by long exposure.

Upon the conclusion of the evidence defendant requested the general affirmative charge in its behalf, and separately requested such charge as to the first and second counts, which was refused. There were several special written charges requested by defendant, which were given, and some refused. Upon submission of the cause to the jury, a verdict was rendered in favor of plaintiff, assessing the damages at $1,415.65, and judgment rendered accordingly. From this judgment defendant prosecutes this appeal.

Coleman & Coleman, of Birmingham, for appellant. Percy, Benners & Burr, of Birmingham, for appellee.

GARDNER, J. The foregoing statement of the case will suffice as a general outline of the issues presented and the questions here for determination. As the result of the fire of December 12, 1914, the Steele-Smith Building, which was adjacent to the Hann Building, in which plaintiff's goods were located, was destroyed, and a large portion of the west wall fell immediately as a result of that fire, but the east wall thereof, which was next to the Hann Building, remained standing until April 21, 1915, when it fell over onto the Hann Building, completely demolishing the same.

It is insisted by counsel for appellant that the insurance company was exempted from liability in this case by the following provisions of the policy:

"If a building, or any part thereof, falls, except as a result of fire, all insurance by this policy on such building, or its contents, shall immediately cease."

It is further insisted that the evidence was insufficient for submission to the jury of the question as to whether or not the fire of December 12, 1914, was the proximate cause of plaintiff's loss, and that the affirmative charge as requested was therefore due the defendant. This is the question of prime importance on this appeal, and will be here first considered.

[1] In the first place, it is argued that importance should be attached to the use of the word "direct" as used in the policy insuring plaintiff "against all direct loss or damage by fire." It has been held, however, and we think correctly so, that the word "direct," used in this connection in such policies, means merely "immediate" or "proximate" as distinguished from "remote." Ermentrout v. Girard F. & M. Ins. Co., 63 Minn. 305, 65 N. W. 635, 30 L. R. A. 346, 56 Am. St. Rep. 481, and that no particular force is to be attached therefore to the word "direct" as used in the policy. N. Y. Cent. Express Co. v. Traders' & M. Ins. Co., 132 Mass. 377, 42 Am. Rep. 440.

It is to be observed also that there is no distinction to be made by the cause of the loss under the language of the policy, where what is insured against is described as "all direct loss or damage by fire," and the causation as it exists in the law of negligence. Speaking to this question, the Supreme Court of Massachusetts, in Lynn Gas, etc., Co. v. Meriden F. I. Co., 158 Mass. 570, 33 N. E.

690, 20 L. R. A. 297, 35 Am. St. Rep. 540, said:

"On principle, and by the weight of authority in many well-considered cases we think it clear that, apart from the single exception above stated, the question, What is a cause which creates a liability? is to be determined in the same way in actions on policies of fire insurance as in other actions."

The exception referred to is without any bearing upon this case, and need not be here considered. The opinion in that case also points out that the direct and proximate cause does not mean that the cause or agency which is nearest in time or place to the result is necessarily to be chosen, concluding this thought in the following language:

"The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started, and working actively from a new and independent source, is the direct and proximate cause referred to in the cases."

The opinion in that case (Lynn Gas, etc., Co. v. Meriden F. I. Co., supra) concludes as follows:

"In the present case, the electricity was one of the forces of nature, a passive agent working under natural laws, whose existence was known when the insurance policies were issued. Upon the theory adopted by the jury, the fire worked through agencies in the building, the atmosphere, the metallic machinery, electricity, and other things; and, working precisely as the defendants would have expected it to work if they had thoroughly understood the situation and the laws applicable to the existing conditions, it put a great strain on the machinery and did great damage. No new cause acting from an independent source intervened. The fire was the direct and proximate cause of the damage according to the meaning of the words 'direct and proximate cause,' as interpreted by the best authorities."

In Home Telephone Co. v. Fields, 150 Ala. 306, 43 South. 711, this court had for consideration, interestingly presented, the application of the principle of the proximate cause of an injury. The opinion made use of the following quotation from Thompson v. L. & N. R. R. Co., 91 Ala. 501, 8 South. 408, 11 L. R. A. 146, which is of more or less interest in this connection:

"If the original wrong becomes injurious only in consequence of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong. But, if the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person, and does actually result in injury, through the intervention of causes which are not wrongful, the injury shall be referred to the wrongful cause. If damage has resulted directly from concurrent, wrongful acts of two persons, each of these may be counted on as the proximate cause and the parties held responsible jointly or severally for the injury."

An interesting discussion of proximate cause is found in Union Pac. Ry. Co. v. Callaghan, 56 Fed. 988, 6 C. C. A. 205, and what is there said in this connection we think is supported by both reason and authority, and we take from that opinion the following pertinent extracts:

"In considering these questions it must also be borne in mind that the proximate cause is not always nor generally the act or omission nearest in time or place to the effect it produces. In the sequence of events there are often many remote or incidental causes nearer in point of time and place to the effect than the moving cause, and yet subordinate to and often themselves influenced, if not produced, by it. Thus a defect in the construction of a boiler of an engine may long exist without harm, and yet finally be the proximate cause of an explosion, to which the negligence of an engineer, the climate, and many other incidental causes nearer by years to the effect may contribute. Cases illustrating this proposition are Railroad Co. v. Kellogg, 94 U. S. 469 [24 L. Ed. 256]; Ins. Co. v. Boon, 95 U. S. 117, 130; Lynch v. Nurdin, 1 Q. B. 29; Illidge v. Goodwin, 5 Car. & P. 190–192; Clark v. Chambers, 3 Q. B. Div. 327; Pastene v. Adams, 49 Cal. 87. Again, an effect is usually the result of many causes, some proximate, others remote. The rule by which the former are to be separated from the latter is admitted by all to be difficult of application, and the best that can be done is to carefully apply it to the circumstances of each case as it arises. * * * The independent intervening cause that will prevent a recovery on account of the act or omission of a wrongdoer must be a cause which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result, that could not have been reasonably anticipated."

In discussing this question of proximate cause, the court in Railroad Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, used the following language:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. * * * In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

[2] As the result of the fire of December 12, 1914, a large portion of the west wall immediately fell, leaving the said west wall with a V-shaped opening. The east wall, which was 140 feet in length and 70 feet in height, remained standing practically without support, except it was tied at each end by the corners of the building to the front and rear walls, and remained standing until it fell on April 21, 1915. The east wall fell substantially to the same extent as did the west wall, leaving a similar V-shaped opening. Considerable water was, of course, thrown upon both walls; and a larger portion of the plastering of the east wall was torn away. The fire was hotter on the west wall on account of the draft produced by the elevator shaft. On the day the east wall fell there was a strong wind, one witness stating it was a "stormy day, gusty," but there was no evidence tending to show that the weather was of such unusual character as not to be reasonably anticipated, and, from the testimony, we think the jury could infer that the condition of the weather was such as is of more or less frequent occurrence during the period of a

year. It was therefore to be clearly anticipated that winds of this character would blow about the weakened wall left standing after the fire, and, although the jury may have found that the winds were contributing causes, they could also have concluded that they were not independent intervening causes, but only a natural and inevitable sequence, and that the fire was in fact the predominating, paramount cause. The jury could have inferred that the fall of the west wall was the immediate consequence or result of the fire, and the fall of the east wall but the delayed consequence thereof. This principle was given application by the Supreme Court of Minnesota in Russell v. German F. I. Co., 100 Minn. 528, 111 N. W. 400, 10 L. R. A. (N. S.) 326. The facts of that case bear striking similarity to those here presented; the greatest difference being in the length of time the wall remained standing. In the Russell Case the wall stood one week, while in the instant case the wall did not fall until the expiration of something more than four months. We will not review the facts, but, as the case is so nearly in point, we take from the opinion the following extracts:

"Whatever may have been the original meaning of the maxim, 'Causa proxima et non remota spectatur,' it has been clearly settled by a long line of decisions that what is meant by proximate cause is not that which is last in time or place, not merely that which was in activity at the consummation of the injury, but that which is the procuring, efficient, and predominant cause. * * * 'The proximate cause of an injury, within the meaning of the law of negligence, is such cause as operates to produce particular consequences without the intervention of any independent or unforeseen cause or event, without which the injury could not have occurred, such consequences as might reasonably have been anticipated as likely to occur from the alleged negligent act.' Proximate cause has also been defined as being that from which the effect might reasonably be expected to follow, without the concurrence of any unforeseen circumstances. * * * In discussing the liability to misapply the maxim, Mr. Phillips (Phillips, Ins. § 1132) observes: 'In case of the concurrence of different causes, to one of which it is necessary to attribute the loss, it is to be attributed to the efficient predominating peril, whether it is or is not in activity at the consummation of the disaster.' Again: 'In every insurance, the risk on each peril is liable to be affected by every other peril; and the party, whether insurer or assured, at whose risk a peril is, must bear the loss by such peril, though it may have been indirectly and incidentally enhanced by another, for which he is not answerable, where there is no express or implied stipulation, obligation, or condition against the subject being exposed to such other peril. * * * The inquiry must always be whether there was any intermediate cause disconnected from the primary fault, and self-supporting, which produced the injury. * * * Applying these principles, it is evident that the contract must be considered from the standpoint of the parties at the time of its execution, in the light of the surrounding circumstances. The risk as defined by the policy covered whatever causes produced the result. The inquiry resolves itself to determining whether or not the wind was an incident in the chain of events, or the primary cause. If, at the time the contract was entered into, windstorms of the character which arose on the night of December 13th, were liable to occur at any time, then the parties contracted with reference to such a possibility. If they could reasonably have foreseen that a fire might leave the wall, 69 feet high and 157 feet long, exposed to winds likely to occur, and that such a wind might blow it down, then such contingency was an element in the risk. The mere fact that the wall stood for the period of several days is not important, provided the wall was not subjected to such a test as occurred on the seventh day. The same inquiry now calling for solution would present itself had the wind come up one, two, or three days after the 13th. The question is not, alone, how much was the standing wall weakened by the fire? but, rather, did the fire leave the wall in such an exposed condition that the wind produced an effect which would not have been produced except for the fire? * * * In all probability the wall would have stood until the building was reconstructed, had it not been for the wind which came at a critical time. Although the later agency in the work of destruction, was it the real cause of the damage? The wind was not the cause, if it was an intervening agency which could reasonably have been foreseen. It could not reasonably have been foreseen if it was an improbable event, not likely to occur. Winds, such as arose December 20th, were liable to occur at any season of the year. It certainly does not conclusively appear from the evidence that such an event should not have been contemplated by the parties when they entered into the contract. It was at least a question of fact."

We are persuaded that the logic of the Russell Case, from which the above quotations are taken, is sound, and we are convinced that the difference in the lapse of time between the fall of the wall in the instant case and in the Russell Case is not sufficient to take the case from without the influence of the principle there announced, and that the court properly submitted to the jury for determination the question as to whether or not the fire of December 12, 1914, was the proximate cause of the loss. The jury was authorized to so find from the evidence that the fire of December 12th, was in fact the proximate cause of the loss, and that the wind was but an intervening agency which could reasonably have been foreseen or anticipated, but an incident in the chain of events. Nor are we convinced to a contrary conclusion from an examination of the authorities cited by counsel for appellant, among them. Cuesta v. Royal Ins. Co., 98 Ga. 720, 27 S. E. 172; Alter v. Home Ins. Co., 50 La. Ann. 1316, 24 South. 180; Travelers' Ins. Co. v. Murray, 16 Colo. 296, 26 Pac. 774, 25 Am. St. Rep. 267.

The question at issue in the case of Ogburn-Griffin Gro. Co. v. Orient Ins. Co., 188 Ala. 218, 66 South. 434, was whether or not the building there involved fell as a result of fire or on account of its own inherent weakness, and is without material aid to the case here presented. We therefore conclude the affirmative charge was properly refused to defendant

[3, 4] Pleas 3, 5, and 6, to which demurrers were sustained, failed to aver that the wall did not fall as a result of the fire, and there

was no error in the action of the court thereon. Moreover, the contention of defendant, with reference to the provision of the policy exempting the company from liability under certain circumstances when the loss is the result of the falling wall, was fully submitted under the second and fourth pleas, and numerous special instructions were given to the jury as to this particular defense, and these pleas merely set up in varying language the same defense.

The questions raised by pleas 7, 8, 9, 10, and 11, which are sufficiently disclosed by a reference to the statement of the case, and need not be here repeated, were considered by this court in the recent case of Ætna Ins. Co. v. Hann, 196 Ala. 234, 72 South. 49, a branch, it seems, of this litigation, and were there decided adversely to appellant's contentions. We have given due consideration to the argument of counsel on this appeal touching these questions, but we are not persuaded thereby of the incorrectness of what was stated in Ætna Ins. Co. v. Hann, supra. Without going into a discussion of these questions, we deem a reference to the above authority sufficient answer to these contentions.

[5] It is further insisted there was reversible error in the refusal of the affirmative charge requested by the defendant as to the second count of the complaint, upon the theory that, although there was some fire in the Hann Building on April 21, 1915, yet this fire did not originate until after the fall of the building, and that therefore there could be no recovery therefor. Counts 1 and 2 were identical with the exception of the date of the fire, which was laid under a videlicet. Whether or not there was technical error in the refusal of the affirmative charge upon this ground (Pollack v. Gunter, 162 Ala. 317, 50 South. 155; Carlisle v. Davis, 9 Ala. 858; Henry v. McNamara, 114 Ala. 107, 22 South. 428; U. S. Health, etc., Co. v. Veitch, 161 Ala. 630, 50 South. 95; U. S. Health, etc., Co. v. Savage, 185 Ala. 232, 64 South. 340; Pence v. Mut. Bene. Life, etc., Co., 180 Ala. 583, 61 South. 817) need not be determined, as the court in its general charge to the jury fully and explicitly stated to them that the fire which occurred in April could only be looked to in the ascertainment or estimation of the damage done, and not for the purpose of determining liability, and that the fire occur-

ring subsequent to the fall of the wall was immaterial in so far as the issues here are concerned, as to liability, and in addition to this several charges were given at the defendant's request, to the effect that plaintiff could not recover unless the loss was occasioned by the fire of December 12, 1914. In no event, therefore, in our opinion, could defendant have suffered any possible injury as to the second count of the complaint.

[6] It is further argued that defendant was entitled to the affirmative charge because of proof without contradiction of pleas 12 and 14, setting up that plaintiff neglected to use all reasonable means to save and preserve the property insured, when the property was endangered by fire which occurred in the neighboring premises, as was his duty under the provisions of the policy set out in the statement of the case. The evidence shows that one McLeod, manager of defendant's store, consulted the building inspector of the city of Birmingham in reference to the safety of the east wall of the Steele-Smith Building, and was informed by the inspector that it was all right. The chief of the fire department also examined the wall, and gave as his opinion that it was safe. Plaintiff was occupying an adjacent building, and had no control over or connection with the Steele-Smith Building. We are of the opinion that the court properly left to the jury the consideration of the question as to whether or not the plaintiff had been guilty of such neglect in reference to the safety of his goods as to constitute a breach of the provisions of the policy above referred to, and that the defendant was not entitled to the affirmative charge on account of said pleas. Fletcher v. German-Am. Ins. Co., 79 Minn. 337, 82 N. W. 647.

We have here considered the questions on this appeal which we deem of sufficient importance to call for separate treatment. The few remaining questions—not here discussed —have been carefully reviewed, and we find nothing in them calling for a reversal of the cause. It results therefore that the judgment of the court below will be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, MAYFIELD, and SOMERVILLE, JJ., concur. SAYRE, J., dissents. THOMAS, J., not sitting.