(124 So. 239)

## COOK v. CONTINENTAL INS. CO.
### (3 Div. 846.)

Supreme Court of Alabama. Nov. 1; 1928.

Rehearing Granted June 20, 1929. Further Rehearing Denied Oct. 31, 1929.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellant.

J. Carter Cook, of Atlanta, Ga., and Steiner, Crum & Weil, of Montgomery, for appellee.

SAYRE, J. Appellee insured appellant's property against loss or damage by fire. The policy is said by the parties to have been in the standard form. By its terms it insured appellant "against all direct loss or damage by fire, except as hereinafter provided." A later provision was expressed in this language: "This company will not be liable for loss caused directly or indirectly by invasion, insurrection, riot, civil war or commotion, or military or usurped power, or by order of any civil authority; or by theft, or by neglect of the insured to use all reasonable means to

save and preserve the property at and after a fire or when the property is endangered by fire in neighboring premises; or (unless fire ensues, and, in that event, for the damage by fire only) by explosion of any kind."

A fire was in progress and had consumed many buildings and was being blown by the wind in the direction of appellant's building. When it had reached the International Truck Company's building on the corner of Bibb and Coosa streets, which was diagonally across the street intersection from appellant's property and 150 feet distant, the fire department of the city of Montgomery, with a view to limiting the spread of the flames, caused a charge of dynamite to be exploded under the truck company's building. The concussion caused the damage for which appellant claims compensation under the policy. There is no claim for damages by combustion. In the trial court appellee, defendant, had the general charge.

■■ The facts are undisputed; the question of liability is one for the court. The question of law presented is whether appellant's loss was a "direct loss or damage by fire" within the meaning of the contract between the parties. The intention of the parties must prevail. If that is clear, the courts have no authority to change the contract in any particular (Day v. Home Ins. Co., 177 Ala. 607, 58 So. 549, 40 L. R. A. [N. S.] 652); if doubtful, the court will lean to that meaning most favorable to the insured, remaining, however, at all times within the terms of the contract, which is to say: "Where the provisions of a policy of indemnity are reasonably susceptible of two constructions, consistent with the object of the obligation, one favorable to the assured, and the other favorable to the assurer, that will be adopted which is favorable to the assured." Travelers' Ins. Co. v. Plaster, 210 Ala. 610, 98 So. 909; Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A. L. R. 734, and authorities cited.

The parties here contracted against "direct loss or damage by fire." In other words, their contract covered proximate loss or damage by fire. Proximate cause, as used in different relations, has provoked much discussion. This court in Western Assurance Co. v. Hann, 201 Ala. 376, 78 So. 232, quoted with approval from Lynn Gas Co. v. Meriden Fire Ins. Co., 158 Mass. 570, 33 N. E. 690, 20 L. R. A. 297, 35 Am. St. Rep. 540, as follows:

"The active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started, and working actively from a new and independent source, is the direct and proximate cause referred to in the cases."

That definition might be enough to settle this controversy in appellee's favor, for the use of dynamite in the circumstances stated discloses an intervening force started and working from a new and independent source. But the parties, having in mind, evidently, some such question as that here raised, undertook, by way of specific exception, further definition of the liability assumed by appellee in this wise (omitting parts immaterial to this inquiry and rearranging material parts in a more orderly fashion): The company will not be liable for loss caused directly or indirectly by explosion of any kind unless fire ensues, and, in that event, for the damage by fire only. This provision is reasonably clear to the conclusion that would exclude liability on the part of appellee in the state of facts shown by the uncontradicted evidence. Most likely it was cast in the form now in question in order to meet some decisions in which insurance companies were held liable for all damages caused by explosions incident to fires. At any rate, the New York Court of Appeals, considering a policy in terms identical with those now in question, so wrote and held, and that the insurance company was thereby relieved from liability for all loss caused directly or indirectly by explosion of any kind and necessarily, therefore, from a loss by concussion caused by an explosion in a neighboring building, whether the explosion be brought about by a lighted match, a fire, or other cause. In the case just now referred to, the fire which caused the explosion fell within the class of "hostile fires" mentioned by appellant in her brief. Hustace v. Phenix Ins. Co., 175 N. Y. 292, 67 N. E. 592, 62 L. R. A. 651.

The authorities which deal with liability under policies like that here under consideration hold that none is imposed by facts such as are here in evidence. Westchester Fire Ins. Co. v. Bell, 151 Ga. 191, 106 S. E. 186, 13 A. L. R. 880; Hustace v. Phenix Ins. Co., supra; Bird v. St. Paul F. & M. Ins. Co., 224 N. Y. 47, 120 N. E. 86, 13 A. L. R. 875; Heuer v. Northwestern National Ins. Co., 144 Ill. 393, 33 N. E. 411, 19 L. R. A. 594; German Fire Ins. Co. v. Roost, 55 Ohio St. 581, 45 N. E. 1097, 36 L. R. A. 236, 60 Am. St. Rep. 711; 6 Cooley's Briefs on Ins. (2d Ed.) 4955–4961.

Affirmed.

THOMAS, BOULDIN, and BROWN, JJ., concur.

### On Rehearing.

BROWN, J. This is an action on a policy of fire insurance, whereby the defendant insured the plaintiff's building, referred to in the evidence as "Goree-Norris building," "against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding forty-five hundred and no/100 Dollars."

The facts are conceded to be without dispute, and for the purposes in hand may be stated to be: On June 4, 1927, a fire originated

in the business district of the city of Montgomery some distance from plaintiff's building, and fanned by a strong wind, before the explosion of a charge of dynamite by the fire department as a means of checking the fire, had traveled several hundred feet toward the east, consuming everything in its path, in width about 300 feet, and plaintiff's building, which was in the direct path of the fire, had caught from sparks several times. Two automobiles inside the building had been burned, and the top of a telephone pole, located within 20 feet of the plaintiff's building, had been burned off. The witness Spencer, who occupied the Goree-Norris building, testified, to quote from the record, "that at the time of the explosion he was on top of the roof of the Goree-Norris building; * * * that at the time of the explosion the wind and the fire were raging kinder toward the Goree-Norris building; that the Goree-Norris building caught fire on top; that it was on fire before the explosion; that he was on top of the building putting it out; that it had caught at least five or six times; that it was blazing up there; that he put it out with a hose; that it was so hot on top that the fire blistered his face; that there were automobiles in the building; that two of the automobiles in the building caught fire and the tops were burned off; that this was on the inside of the building and was just before the explosion; that fire was raging at the time of the explosion; that after the explosion it looked like the whole fire just went out, just dropped down where the explosion was. This building had two walls. That before the explosion and at the time of the explosion the fire was leaping across to the Goree-Norris building and leaping everywhere. It was leaping from the building that was dynamited, coming toward the Goree-Norris building."

Chief Nixon of the fire department testified, referring to the International Truck Company building that was dynamited: "It was just like a tar-kiln and smoking all over but the fire hadn't broke out. * * * This building never blazed out but it was a fire all over. In fact, you couldn't get into the building, but it didn't burn there anywhere—didn't blaze up."

This witness further testified, in respect to the Goree-Norris building being in the direct course the fire was taking: "Oh, yes, the Goree-Norris building and the other one too, because the flames were leaping up, we had flames everywhere and it looked like the whole thing was going to burn, and if the corner building (the one dynamited) had blazed out, you understand, there is no telling where it would have leaped to, because the high building, that tall building was just fixing to break out."

The appellant's building is located 150 feet from the International Truck Company's building on the corner of Bibb and Coosa streets, and during the progress of the fire, the fire department of the city, for the purpose of checking the fire, caused a charge of dynamite to be exploded under the truck company's building, and by the concussion from the explosion plaintiff suffered a loss of $618.-76, which she seeks to recover in this action. The evidence is clear to the conclusion that the explosion of the dynamite at the time and place was reasonably necessary to check the fire, and as the result of the explosion the fire was brought under control and plaintiff's building saved from burning.

The appellant's contention now is that the explosion was a mere incident of the fire and that the damage caused thereby was within the hazards covered by the policy as a direct loss by fire.

The appellee's contention, which prevailed on the trial, is that the loss suffered by the plaintiff is clearly within the exception embodied in the policy to the effect that: "This Company shall not be liable for loss caused directly or indirectly by invasion, insurrection, riot, civil war or commotion, or military or usurped power, or by order of any civil authority, or by theft, or by neglect of the insured to use all reasonable means to save and preserve the property at and after the fire *or when the property is endangered by fire in neighboring premises; or (unless fire ensues, and, in that event, for the damage by fire only) by explosion of any kind.*" (Italics supplied.)

The construction of this exception, embodied in the standard policy of fire insurance, has been the subject of much controversy, and, as will appear from an examination of the decided cases, it is not entirely clear of meaning and its construction has provoked much contrariety of opinion. To paraphrase the provision of the contract here pertinent, it is: *This Company shall not be liable for loss caused directly or indirectly by explosion of any kind, unless fire ensues, and in that event for damage by fire only.* And the question to be decided is: Was it within the contemplation of the parties, in entering into this contract, to exclude liability resulting from explosion friendly to the interest of the parties to the contract, designed to check and save the insured property from destruction, or is it limited to hostile explosions, inimical to the interest of both parties, not caused by fire.

To adopt the language of the opinion heretofore promulgated: "The intention of the parties must prevail. If that is clear, the courts have no authority to change the contract in any particular (Day v. Home Ins. Co., 177 Ala. 607, 58 So. 549, 40 L. R. A. [N. S.] 652); if doubtful, the court will lean to that meaning most favorable to the insured, remaining, however, at all times within the terms of the contract, which is to say: 'Where the provisions of a policy of indemni-

ty are reasonably susceptible of two constructions, consistent with the object of the obligation, one favorable to the assured, and the other favorable to the assurer, that will be adopted which is favorable to the assured.' Travelers' Ins. Co. v. Plaster, 210 Ala. 610, 98 So. 909; Ill. Automobile Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A. L. R. 734."

To state the rule in the language of another opinion: "Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts. There are times when the law permits us to go far back in tracing events to causes. The inquiry for us is how far the parties to this contract intended us to go. The causes within their contemplation are the only causes that concern us." Bird v. St. Paul Fire & Marine Ins. Co., 224 N. Y. 47–51, 120 N. E. 86, 87 (13 A. L. R. 875).

■ There can be no doubt that when fire precedes an explosion and spreads to the insured's building and there causes an explosion, the insurer under the standard policy is liable for the damage. Bird v. St. Paul Fire & M. Ins. Co., supra; Wheeler v. Phenix Ins. Co., 203 N. Y. 283, 96 N. E. 452, 38 L. R. A. (N. S.) 474, Ann. Cas. 1913A, 1297; Lynn Gas & Electric Co. v. Meriden Fire Ins. Co., 158 Mass. 570, 33 N. E. 690, 20 L. R. A. 297, 35 Am. St. Rep. 540; Scripture v. Lowell Mutual Fire Ins. Co., 10 Cush. (Mass.) 356, 57 Am. Dec. 111; Waters v. Merchants' Louisville Ins. Co., 11 Pet. 213, 225 (9 L. Ed. 691).

And in the absence of an exception which excludes the risk, a like liability follows when an explosion caused by fire occurs in a neighboring building. Bird v. St. Paul Fire & Marine Ins. Co., supra; Hustace v. Phenix Ins. Co., 175 N. Y. 292, 67 N. E. 592, 62 L. R. A. 651; Githens v. Great American Ins. Co. of N. Y., 201 Iowa, 266, 207 N. W. 243, 44 A. L. R. 863; Western Assur. Co. v. Hann, 201 Ala. 376, 78 So. 232.

■ And, likewise, in the absence of an exception which excludes the hazard, a like liability follows when explosives are used as a means of stopping the spread of fire, such loss being adjudged to be mere incident of the fire like that resulting from the use of water, chemicals, or other agencies to prevent the spread of fire. Greenwald v. Insurance Co., 3 Phila. (Pa.) 323; 14 R. C. L. 1218, § 398; 26 C. J. 342, § 434; 4 Joyce on Ins. § 2824.

■ The question of proximate cause, though involved in the question of ultimate liability, is not involved in the consideration of the exception. The question is whether or not the character of explosions here involved was within the contemplation of the exception excluding liability for damages resulting from explosions.

In Wheeler v. Phenix Ins. Co., 203 N. Y. 283, 96 N. E. 452, 38 L. R. A. (N. S.) 474, Ann. Cas. 1913A, 1297, in which all the Justices concurred, the case of Hustace v. Phenix Ins. Co., 175 N. Y. 292, 67 N. E. 592, 62 L. R. A. 651, decided by a divided court, was explained, limited, and qualified, and in the Wheeler Case, the exception in the standard policy was construed. It was there said, speaking of the exception: "It is apparent that a fire, which precedes and causes the explosion, is not embraced in the exception contained in the policy from the provision which insures against all direct loss or damage by fire. [Italics supplied.] Nor do we think that the words 'by explosion of any kind' were intended to refer to the agency which produced the explosion but have reference to the different kinds of material that explode, such as powder, dynamite, gas, dust, etc. Had the Legislature, in adopting the standard form of policy, intended to have included explosions caused by fire with explosions from which fire ensues among the losses excepted from the provisions of the policy it doubtless would have done so in express terms. That such was not its intention we think is clearly evident from the fact that they were careful to limit the exception to those explosions from which a fire ensues." (Italics supplied.)

In the Wheeler Case the court cites with approval Washburn v. Miami Valley Ins. Co. (C. C.) 2 Flip. 664, 2 F. 633, decided by Justice Swayne of the Supreme Court of the United States, construing the clause, in which it was observed: "Explosives are named only in connection with fires which they have produced. There is nothing said about them in connection with fires which have produced them. The policies on that subject are wholly silent."

The exception deals with hostile agencies, agencies inimical alike to the interest of the insured and the insurer, "invasion," "insurrection," "riot," "civil war or commotion," "military or usurped power," "theft," or "by order of any civil authority," "fires caused by explosion," and imposes on the insured the duty "to use all reasonable means to save the property at and after the fire or when the property is endangered by fire in a neighboring premises."

From these considerations it seems clear that damage resulting from the use of friendly agencies reasonably necessary to prevent the spread of fire to the insured building then in danger from such fire then raging, whether it be water, chemicals, or explosives, was not within the contemplation of this exception, and damages so caused must be regarded as mere incidents of the fire, covered by the policy. 4 Joyce on Insurance, § 2824; City Fire Ins. Co. v. Corlies, 21 Wend. (N. Y.) 367, 34 Am. Dec. 258.

This view is not only strongly supported by these authorities, but by reason and common

sense. It is not reasonable to suppose that the insurer would insure the property from the hazard of fire, and in the same contract suppress and discourage the use of agencies ordinarily used in extinguishing fires, such as water, chemicals, and explosives. The facts of this case clearly illustrate the fallacy of such contention. If the fire in question had not been brought under control by the explosion, assuming that plaintiff's building would have been destroyed, and the evidence warranted the jury in so finding, the resulting liability would have been $4,500. According to the evidence of the chief of the fire department, the fire had reached the stage where the use of water was ineffective, because the firemen could not get to it where it was raging in the building dynamited with this agency, making the use of dynamite necessary, and by its use the liability was reduced to something over $600.

We have but to quote from the opinion of the court in Wheeler's Case, to differentiate this case from the Hustace Case: "In the Hustace Case a large building at the corner of Warren and Greenwich Streets in the City of New York, occupied by dealers in drugs and chemicals, was on fire. The fire had raged for half an hour and then a terrific explosion took place caused by 'the igniting of the chemicals stored therein, wrecking several buildings, among which was that of the plaintiff's, which was located across a street or alley some fifty-seven feet distant therefrom. The plaintiff's building fell by reason of the concussion caused from the explosion. *No hostile fire was in progress* upon the plaintiff's premises and no explosion occurred therein. It was held in this court that the loss sustained by the plaintiff was not a 'direct loss or damage by fire' within the meaning of the policy, *but the fire was only a remote and indirect cause* of the concussion which caused the plaintiff's building to fall. * * * It may be true that in the opinion discussing the various cases upon the subject there may be some expression that has misled the trial Court in this case, *but the learned chief judge in concluding his opinion in that case was careful to limit the decision to the peculiar facts presented in that case.*" (Italics supplied.)

The clear effect of the holding in the Hustace Case is that the explosive clause protects the insurer against liability resulting from explosions, though the explosion is preceded and caused by a fire, as the following utterances taken from the opinion in that case demonstrate:

" 'The plaintiffs insist, however, that an explosion caused by a fire is a fire, and, therefore, defendant is liable for the explosion as for a fire. But that reasoning gives no force to the exception. It allows a recovery for the explosion when the policy expressly stipulates that the defendant will not be liable for that. It may be conceded that in the absence of this exception a recovery could have been had for the whole damage as for loss by fire. The authorities referred to by the plaintiffs' counsel tend to that result. I do not think that position will aid the plaintiffs. An explosion without this exception, if it came under the general head of fire, might have afforded ground for recovery, but defendant guarded against that result by this express stipulation. The exception, too, is general, including explosions by fire as well as others.'

"As will be seen by comparison of the exemption clause in that policy with the one under consideration, that decision, as well as the argument of the court, in which all concurred, is equally applicable to the clause in this policy and to this situation.

"The Briggs Case [53 N. Y. 446] is the only authority in this court precisely in point as to the construction to be given to this exemption clause, and in that case the fire followed the explosion; but the court said of the exemption clause that it included explosions caused by fire as well as others." 175 N. Y. 299, 67 N. E. 594, 62 L. R. A. 651.

The Wheeler Case is to the contrary. We quote the syllabus (203 N. Y. 283 [96 N. E. 452, 38 L. R. A. (N. S.) 474, Ann. Cas. 1913A, 1297]): "When a policy of insurance against fire upon a grain elevator provides that the company should not be liable for loss by explosion of any kind unless fire ensues, and in that event for the damage by fire only, a fire preceding and causing the explosion is not embraced in the exception from the provision which insures against all direct loss or damage by fire, and if a negligent or hostile fire exists within the insured premises and an explosion results therefrom under such circumstances as to constitute the fire the proximate cause of the loss and the explosion merely incidental, the company becomes liable upon its policy for the loss resulting therefrom."

The gist of the decision of the Georgia court in Westchester Fire Ins. Co. v. Bell, 151 Ga. 191, 106 S. E. 186, 13 A. L. R. 880, which cites and relies on Hustace v. Phenix Ins. Co., supra, is found in the following expression, after quoting the explosion clause: "The exception expressly states that the Company shall not be liable for loss caused directly or indirectly by explosion of any kind, unless fire ensues, and, in that event, for damage by fire only. This language is explicit and unequivocal. The use of the expression 'explosion of any kind' indicates that explosions of more than one kind were contemplated; *and the obvious meaning of the exception is that the Company shall not be liable for loss caused directly or indirectly by any kind of an explosion whatsoever, unless fire ensues from the explosion, and in that event the Company shall be liable for damages caused by the fire*

168

*only, and not by the explosion."* (Italics supplied.)

This case is clearly in conflict with the holding in Wheeler v. Phenix Ins. Co., 203 N. Y. 283, 96 N. E. 452, 38 L. R. A. (N. S.) 474, Ann. Cas. 1913A, 1297, and Washburn v. Miami Valley Ins. Co. (C. C.) 2 F. 633, and the weight of authority as to the construction of the explosion clause. See annotation 13 A. L. R. 883; Githens v. Great American Ins. Co. of N. Y., supra.

The substance of the holding in the Githens Case is summarized in the first headnote 44 A. L. R. 863, as follows: "Under a policy insuring against all direct loss or damage by fire except loss by explosion of any kind unless fire ensues, and, in that event, for damage by fire only, the insurer is liable if fire works across the division wall from an adjoining building and causes an explosion which lifts the roof and injures the insured property, although no fire follows the explosion within the building where the insured property is located." See, also Liverpool & L. & G. Ins. Co. v. Currie (Tex. Civ. App.) 234 S. W. 232.

The fault in the opinion of my brother, Mr. Justice SAYRE, while it correctly states the rule of construction, ignores this universal rule, as did the Court of New York in the Hustace Case, and the Georgia Court in the Bell Case, and construes the explosive clause most favorably to the insurer.

██ If the plaintiff's building was within the zone of danger from the raging, hostile fire, a question which, under the evidence, was one for the jury, and the dynamiting of the truck company's building was reasonably necessary to check the progress of the fire, this *lawful* act could not be considered an independent intervening force sufficient to break the chain of causation that would relieve the insurer from liability. Thompson v. L. & N. R. R. Co., 91 Ala. 501, 8 So. 408, 11 L. R. A. 146; Dye-Washburn Hotel Co. v. Aldridge, 207 Ala. 475, 93 So. 512.

To quote again from Bird v. St. Paul F. & M. Ins. Co., 224 N. Y. 52, 120 N. E. 87, 13 A. L. R. 875: "We must put ourselves in the place of the average owner whose boat or building is damaged by the concussion of a distant explosion, let us say a mile away. Some glassware in his pantry is thrown down and broken. It would probably never occur to him that within the meaning of his policy of insurance, he had suffered loss by fire. A philosopher or a lawyer might persuade him that he had, but he would not believe it until they told him. He would expect indemnity, of course, if fire reached the thing insured. *He would expect indemnity, very likely, if the fire was near at hand, if his boat or his building was within the danger zone of ordinary experience, if damage of some sort,* whether from ignition or from the indirect consequenc-

es of fire, might fairly be said to be within the range of normal apprehension." Under the facts of this case, the trial court erred in directing a verdict for the defendant, and for this error the judgment must be reversed.

GARDNER and FOSTER, JJ., and BRICKEN, Special Justice, concur in the foregoing.

SAYRE, THOMAS, and BOULDIN, JJ., dissent.

ANDERSON, C. J., not sitting.

BRICKEN, Special Justice (having been appointed by the Governor according to the provisions of section 10274 of the Code). After an attentive consideration of the points of decision involved, I have reached the conclusion that the judgment of the lower court in the case of Marie B. Cook v. Continental Insurance Company, a Corporation, should be reversed. I concur in the opinion and conclusion of Mr. Justice BROWN on rehearing in this case.

The contract involved in this case, like all other contracts, must be construed according to the intention of the parties. That intention must be found within the document itself, keeping in mind always the object or purpose the parties sought to accomplish by entering into an agreement of that character.

In the case at bar, a fire of dangerous proportions was raging in the city of Montgomery. It had traveled some 700 feet from its place of origin towards the insured building. The flames were jeopardizing the insured property. Sparks from this fire had set fire to the property several times and practically destroyed two automobiles that were in the insured building. The fire was beyond the control of the available fire fighting forces of Montgomery working with the ordinary and usual means of extinguishing fires. To check this fire, and save as much as possible of the insured property, as well as other property, the chief of the fire department dynamited a building near the insured building. This operation was successful. It seems to be conceded that the insured property and probably other valuable property was doomed to destruction by the fast approaching fire unless the resort to the use of explosives proved successful. The use of the dynamite damaged the insured property to some extent, and the insured seeks to recover the amount of that damage in an action on the policy.

This brief statement of the high points in the case, it seems to me, is sufficient to satisfy the judicial mind that the loss is covered by the policy. Had the firemen entered the building with a line of hose for the purpose of wetting it and preventing it bursting into flames, and, in the management or handling of the hose, damaged property included in this policy, I do not apprehend that it would be seriously contended that such damages

would not be recoverable in an appropriate action. Had the force of the water from a line of hose damaged the insured building while the hose was being used to extinguish sparks and embers, I am of the opinion that we would all agree that the insurer would be liable under the policy for such damage. The fact that dynamite was used, instead of hose and water, or rather in addition to hose and water, cannot, in my judgment, alter the case. Evidently the chief of the fire department, a man of much experience in such matters, was of the opinion that this was the thing to do. The result speaks for itself and indicates that his judgment was good.

The use of the dynamite, under the circumstances stated, was not, in my opinion, an "intervening force started and working from a new and independent source," any more than the use of water or hose or chemicals would be an intervening force. Matters of that kind are incidents of the fire. Rather than being an "intervening force started and working from a new and independent source," it seems to me that they might be more properly classified as lawful agencies utilized in an emergency to check or break the force of the destructive agency—fire—that the parties attempted to insure against.

The parties must be held to have contemplated that the fire fighting forces of the city of Montgomery would, should the circumstances arise, do the wise, prudent, and reasonable thing to protect this, and all other property, from complete destruction by fire. This is what they were established for. That is why they are maintained at much public expense. Whenever a fire, therefore, causes those forces to damage property in an effort to preserve it from destruction by fire, the ensuing loss or damage, it seems to me, is "direct loss or damage by fire," and well within the terms of the policy of insurance, and therefore not within the exception, as contended.

SAYRE, J. Judge BROWN'S opinion, aside from general propositions and irrelevancies, invokes the supposed authority of Wheeler v. Phenix Ins. Co., 203 N. Y. 283, 96 N. E. 452, 38 L. R. A. (N. S.) 474, Ann. Cas. 1913A, 1297, and Bird v. St. Paul Fire & Marine Ins. Co., 224 N. Y. 47, 120 N. E. 86, 13 A. L. R. 875. There is no use to refer to cases in which the policies were differently worded. It was to avoid the consequences supposed to flow from such policies that the standard policy—the policy in this case—was adopted.

The Wheeler Case is said to be to the contrary of the Hustace Case. The Court of Appeals of New York does not appear to think so, for it has said: "There is nothing in that case [the Hustace Case] which is in conflict with the views that we have expressed in this case." And then the court said that the

trial court in the Wheeler Case may have been misled by some expression in the Hustace Case. So far as I am able to learn, the law of the Hustace Case is still the law of New York. The court in the Wheeler Case was of opinion "that when a negligent or hostile fire exists within the insured premises and an explosion results therefrom under such circumstances as to constitute the fire the proximate cause of the loss and the explosion merely incidental the company becomes liable upon its policy for the loss resulting therefrom." The court thus shows its consideration of proximate cause in determining the meaning of the policy, and in that case plaintiff was suing for the loss of his building caused by a fire and an explosion within the building. So in Bird v. St. Paul Fire & Marine Ins. Co., the Court of Appeals of New York discourses at considerable length on the subject of proximate cause as affording a clew to the meaning of the policy, and quoted from a case decided by the House of Lords (Leyland Shipping Co. v. Norwich Fire Ins. Society, 118 Law Times, 120, 125) as showing that the subject of proximate cause affords the true method of approach to the question of the intention of the parties in entering into the contract of insurance.

In the Bird Case plaintiff's canal boat was insured, as the Court of Appeals says, against the perils of the "Sounds, Harbors, Bays, Rivers, Canals and Fires, that shall come to the damage of the said boat." "There was no express exception of damage from explosion." The facts were that cars loaded with explosives caught on fire. The contents of the cars exploded. "This explosion," to quote again from the opinion of the Court of Appeals, "caused another fire, which in turn caused another and much greater explosion of a large quantity of dynamite and other explosives stored in the freight yard. The last explosion caused a concussion of the air, which damaged plaintiff's vessel about one thousand feet distant to the extent of $675. No fire reached the vessel, the damages being solely from the concussion caused by the second explosion." In conclusion the Court of Appeals used this language: "In this case, the facts are not disputed. The inferences to be drawn from them are not doubtful. The damage was not a loss by fire within the meaning of the policy."

In Washburn v. Miami Valley Ins. Co. (C. C.) 2 F. 633, the fire and the explosion were in the same building, as was the fact in the Wheeler Case.

Reference is made in Judge BROWN'S opinion to the annotation following the case of Westchester Fire Ins. Co. v. Bell, 13 A. L. R. 883. I quote the text on page 886: "The provision of the standard policy excepting loss by explosion is to the effect that the insurer shall not be liable for loss caused, directly or indirectly, by explosion of any kind,

170

unless fire ensues, and in that event for damage by fire only."

And on page 891 of 13 A. L. R., under the heading "Damage by explosion in neighboring building," appears the following: "It is generally held, where a policy insures against loss by fire, and provides against liability for loss caused directly or indirectly by an explosion of any kind, that the insurer is not liable, for losses occasioned merely by the concussion of an explosion which occurs in another building, although the explosion was caused by the existence of a fire"—citing cases from Colorado, Illinois, Kentucky, Louisiana, New York (Hustace Cases and others), Ohio, and Tennessee.

"In Joyce on Insurance"—I quote from page 884 of 13 A. L. R.—"it is said: 'Insurers are liable upon a policy which contains a condition of this nature [i. e., excepting liability for damages by explosions of any kind] where fire originates in the insured premises and the fire produces an explosion which destroys the property. The entire loss in such a case is held to be a loss by fire.' Vol. 3, p. 2532."

"Again, this author says: 'If the combustion and explosion are inseparably connected' "—as, I note, was the case in Wheeler v. Phenix Ins. Co., and Washburn v. Miami Valley Ins. Co., supra, and, as I think, was the case in Githens v. Great American Ins. Co., 201 Iowa, 266, 207 N. W. 243, 44 A. L. R. 863, which has been cited as authority against the original opinion in the case now before this court—" 'if a combustible substance in the process of combustion produces explosion also, and fire is the agent throughout, and there is a loss by both fire and explosion, it is held that the whole damage is covered by a policy insuring against loss by fire.' Id. p. 2707." I have followed the theory of the two preceding paragraphs.

And in the annotation following Githens v. Great American Ins. Co., 44 A. L. R. 863, under the heading "damage by explosion in neighboring building," the test I have quoted from 13 A. L. R. 891, is repeated with additional citation of adjudicated cases from Missouri and Texas.

In the case here under consideration it would hardly seem to be necessary to say again that there was no claim for damages by combustion. The claim was for damage caused by concussion from an explosion in a building across the street, and not otherwise.

It is stated in the opinion of Mr. Justice BROWN that I have construed the "explosive clause" most favorably to the insurer. My judgment is that the unmistakable meaning of the stipulation of the policy, which was quoted at the outset, excludes the possibility of recovery by appellant, and that the only favor indulged by the courts, in this or any other case, has been in the interest of the insured and has heretofore reached only those cases in which, fire and explosion occurring in the same building, it was impossible to allocate the loss due to the different causes, and therefore the insured has been allowed, notwithstanding the plain terms of the policy, to recover for the whole loss. But that is not this case. In this case the entire loss in suit was caused by explosion only.

THOMAS and BOULDIN, JJ., concur in this view.

BOULDIN, J. (concurring). A rather careful study of the case on rehearing has confirmed me in the view that the opinion correctly states the law of the case.

We are dealing with a standard fire policy. The coverage, by its general terms, is limited to "direct loss or damage by fire." This is followed by exceptions, among which are "explosions of any kind * * * unless fire ensues, and, in that event, for the damages from fire only."

The damages here were solely from concussion, an incident of the explosion, extending in all directions from the point of explosion a distance depending upon its violence.

The main contention, and one which the writer has seriously considered, is that the explosion was in course of fire fighting operations by the fire department, designed to check the spread of a conflagration endangering much property, including the insured building.

It is the law that damages from the use of water or chemicals in the extinguishment of flames are regarded as incident to the fire, are contemplated as beneficial to both insurer and insured, and are recoverable as part of the direct fire loss. Granting that as to property on fire the use of explosives comes within the same rule, we still face the question as to the meaning of this explosion clause as applied to this case.

I think it the settled law that where a building insured under a standard fire policy is on fire and an explosion therein is caused by the fire, the damage from explosion is a part of the direct loss by fire, and recoverable. This rule is based upon the ground that the explosion is a mere incident of the fire.

Yet, in such case, the authorities seem to uniformly hold that this liability does not extend to other insured buildings damaged solely by concussion from such explosion. Without question there is a direct chain of causation in such case from the fire which set off the explosion to the loss involved. But the law is written that such chain of causation, usually made the test of proximate cause in actions of torts, is not to be applied in the construction of this carefully framed provision excluding explosions as a risk under fire policies. No fire loss, no loss by explosion incident to the fire.

Such being the construction given this provision of the standard fire policy from the time of its adoption, and by courts familiar with its history and purpose, it must be regarded as the law of the contract, defining and differentiating fire insurance from explosion insurance.

Presumably insurance rates are now based upon such legal construction.

THOMAS, J., concurs in the foregoing.